## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

CHRISTINA GRAHAM, individually      Civil Action No.
and as a representative of the classes,

            **COMPLAINT – CLASS ACTION**
            **(JURY TRIAL DEMANDED)**
     Plaintiff,

v.

MICHAELS STORES, INC.

     Defendant.
_____

Christina Graham ("Plaintiff") (13 Carlton Street, Apt. 1, East Orange, NJ 07017), by and through her attorneys, on behalf of herself and the classes set forth below, brings the following Class Action Complaint against Michaels Stores, Inc. ("Defendant" or "Michaels") (8000 Bent Branch Drive, Irving, TX 75063).

## PRELIMINARY STATEMENT

1.    This putative class action is brought pursuant to the Fair Credit Reporting Act ("FCRA") and the New Jersey Fair Credit Reporting Act, N.J. Stat. §§ 56:11-29 – 11-41 ("NJFCRA") against an employer who routinely violates the FCRA's and the NJFCRA's basic protections by failing to obtain the proper authorization to conduct background checks as required by the FCRA and the NJFCRA.

2.      In light of the potentially determinative role that consumer reports can play regarding an applicant's employment prospects, employers are required to ensure that all applicants are aware of the employer's intention to procure a background check.

3.      Specifically, an employer or prospective employer cannot "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless …a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes."  15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added); *see* N.J. Stat. Ann. § 56:11-31(c)(1).  This requirement is frequently referred to as the "stand-alone disclosure requirement."

4.      The stand-alone disclosure requirement is important because it enables consumers to control and correct the information that is being disseminated about them by third parties.

5.      Defendant has willfully and systematically violated 15 U.S.C. § 1681b(b)(2)(A)(i) and N.J. Stat. Ann. § 56:11-31(c)(1) by procuring consumer reports on Plaintiff and other putative class members for employment purposes, without first making a proper disclosure as required by the FCRA and NJFCRA.

6.     Defendant's online job application is the only thing provided to applicants prior to Defendant procuring a consumer report on them which relates in any way to the fact that a consumer report may be procured.

7.     Defendant's online job application does not comply with the FCRA and NJFCRA's stand-alone disclosure requirement.  A blank copy of Defendant's online job application, which is a fair and accurate representation of the application Plaintiff completed, is attached hereto as Exhibit 1.  Rather, the only mention Defendant makes of the fact that a consumer report will be procured for employment purposes is in a series of paragraphs which appear on the same web page as numerous other pieces of extraneous information, including a purported liability release, various disclosures about who Defendant may share information with, an authorization for third parties to provide information to a consumer reporting agency, and numerous multi-paragraph purported "state law notices" relating to a variety of state laws, from state laws protecting people with criminal backgrounds against employment discrimination to lie detector tests.

8.     Many of the extraneous pieces of information included in Defendant's job application, including the liability release, are the subject of longstanding FTC and judicial guidance indicating that their presence alone is sufficient to render an otherwise compliant disclosure non-compliant.

9.     Based on Defendant's conduct, Plaintiff asserts FCRA and NJFCRA claims on behalf of herself and the classes defined below.  On behalf of herself and the classes, Plaintiff seeks statutory damages, punitive damages, attorneys' fees, litigation costs, and all other available relief.

## PARTIES

10.     Individual and representative Plaintiff Christina Graham is a resident of East Orange, New Jersey.

11.     Defendant Michaels Stores, Inc. is a chain of craft supply stores that has retail locations nationwide.  Michaels is headquartered in Texas, incorporated in Delaware, and has multiple retail locations in New Jersey.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question.

13.     Venue is proper in this District because Plaintiff resides here, applied for employment here, and because Defendant does business here.

## STATUTORY BACKGROUND

14.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns:   first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit,

and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

15.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

16.     Congress was particularly concerned about the use of consumer reports by employers to deny otherwise qualified job applicants or to take other adverse actions against employees.  Accordingly, Congress required employers to make a clear and conspicuous written disclosure to employees and job applicants, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes.  15 U.S.C. § 1681b(b)(2).  This is commonly referred to as the "stand-alone disclosure" requirement.

17.     The FCRA stand-alone disclosure requirement ensures that employees and job applicants know when reports about them are being generated.  This notice is one of many elements of the FCRA that combine to ensure that consumers are aware that consumer reports are generated about them, that they know their rights, and that they have the opportunity to dispute errors in their reports.  15 U.S.C. § 1681b(b)(3)(A)  (pre-adverse  employment  action  notice  requirement);  § 1681b(4)(B)  (notification  of  national  security  investigation);  §  1681c(h)

5

(notification of address discrepancy); § 1681d(a) (disclosure of investigative report); § 1681g (full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding the use of public record information); § 1681h (form and conditions of disclosure); § 1681m(a) (notice of adverse action).

18.     The NJFCRA was passed in 1997 for the purpose of providing "additional consumer protection with respect to consumer credit reports and credit reporting agencies consistent with the provision of the [FCRA]."  N.J. Stat. Ann. § 56:11-29.

19.     The NJFCRA also contains a stand-alone disclosure requirement identical to that in the FCRA.  N.J. Stat. Ann. § 56:11-31(c)(1).

20.     As discussed below, Defendant routinely violates the FCRA and the NJFCRA by failing to provide the required stand-alone disclosure to employees and job applicants.

## ALLEGATIONS RELATING TO PLAINTIFF GRAHAM

21.     In June 2014, from her home in New Jersey, Plaintiff applied for employment with Defendant by completing a job application on Defendant's website.   Eventually, she secured employment with Defendant.   She left voluntarily after several months.

22.     During the online application process, Plaintiff was guided through a series of computer screens and asked to enter information about herself into Defendant's online job application.

23.     Defendant's online job application did not comply with the FCRA and NJFCRA requirements that before procuring a consumer report for employment purposes a prospective employer must disclose that the employer may procure a consumer report for employment purposes in a document that "*consists solely of the disclosure*."  15 U.S.C. § 1681b; *see* N.J. Stat. Ann. § 56:11-31(c)(1).

24.     Defendant's online job application violated the "stand-alone disclosure" requirement because it included the disclosure in the job application, rather than in a document consisting solely of the disclosure.

25.     The application contains a plethora of information extraneous to a disclosure that a consumer report will be procured for employment purposes. Specifically, the application contains the following items, each of which would alone be sufficient to render the application non-complaint with the stand-alone disclosure requirement, and all of which, in combination, certainly render the application non-compliant:

- A section for the applicant to fill in regarding the applicant's prior employment, and reason for leaving same;

- A statement that Defendant may share the information contained in a consumer report about the applicant with Defendant's "current and prospective clients, customers and/or their agents";

- A statement that Defendant reserves its rights under federal state and local law;

- Ten different purported "state law notices" several of which are multiple paragraphs long and many of which include links to other documents, such as Article 23 of New York Correction law, which is itself numerous pages long and pertains to conviction record protection laws in New York having nothing to do with consumer reports, as well as links to Maryland and Massachusetts laws having to do with lie detector tests;

- A statement that the applicant has reviewed, and understands all of the aforementioned information, notices and statements, including the various state law notices;

- A purported agreement from the applicant that a single authorization will remain in effect for the duration of the applicant's employment, and that no further disclosures or authorization will be required;

- A statement from the applicant that the applicant understands that all date of birth/sex information will be used for background check

8

purposes only and that all of Defendant's employment decisions are based on non-discriminatory reasons;

- A so-called application agreement whereby the applicant purports to release Defendant, all third parties, and all of Defendant's consumer reporting agencies from various liabilities;

- A purported agreement from the applicant to take a drug test;

- A statement that the applicant understands that false information may lead to immediate dismissal;

- A statement that the applicant is required to abide by all rules and regulations of Defendant's stores; and

- A statement that the applicant understands that any employment will be "at will" and that the applicant accepts that the job application is not a contract for employment.

26.   All of the information contained in Exhibit 1, and referenced in Paragraph 25 of this Complaint was conveyed on a single web page to Plaintiff. Plaintiff was not required to click on anything, or to fill in any boxes to review the entirety of this information at a single time.

27.   The information outlined herein was all on a single web page, viewable on a single computer screen, and residing at a single web address.

28.    Despite its failure to provide Plaintiff with the required stand-alone disclosure, Defendant subsequently requested that its outside consumer reporting agency, General Information Services, Inc. ("GIS") provide it with a consumer report on Plaintiff.

29.    On or about June 21, 2014, GIS furnished the consumer report attached hereto as Exhibit 2 to Defendant.

30.    Defendant's conduct unambiguously violates the FCRA and NJFCRA.  First, it is evident that a stand-alone disclosure cannot be part of a larger job application, but must be an entirely separate document.  *See EEOC v. Video Only, Inc.*, 2008 WL 2433841 (D. Or. 2008) (15 U.SC. § 1681b "provides that at any time before the report is procured, a disclosure is made in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes. [Defendant] disclosed this possibility as part of its job application, which is not a document consisting solely of the disclosure.").

31.    Second, it is evident that a stand-alone disclosure cannot contain anything other than the disclosure and an authorization for a consumer report to be procured.  *See* 15 U.S.C. 1681b(b)(2); N.J. Stat. Ann. § 56:11-31(c)(1).  FTC guidance is clear that "the [disclosure] form should not contain any extraneous information."  Exhibit 3 (Hauxwell, 1998).

32.    The inclusion of a purported liability waiver is a particularly well-established FCRA violation.  *See* Exhibit 3 (Hauxwell, 1998) ("The inclusion of such a [liability] waiver in a disclosure form will violate Section 604(b)(2)(A)[1] of the FCRA, which requires that a disclosure consist 'solely' of the disclosure that a consumer report may be obtained for employment purposes."); *Reardon v. ClosetMaid Corp.*, 2:08-CV-01730, 2013 WL 6231606, *9 (W.D. Pa. Dec. 2, 2013) (granting summary judgment to plaintiff-class and finding employer's willful violation of 15 U.S.C. § 1681b based on employer's inclusion of a liability waiver in a document purporting to constitute the required stand-alone disclosure); *Singleton v. Domino's Pizza, LLC*, CIV.A. DKC 11-1823, 2012 WL 245965 (D. Md. Jan. 25, 2012) ("Ultimately, both the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document").

33.    Defendant willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i) and N.J. Stat. Ann. § 56:11-31(c)(1) by procuring a consumer report on Plaintiff for employment purposes without first providing Plaintiff a clear and conspicuous written disclosure, in a document consisting *solely of the disclosure*, that a consumer report may be obtained for employment purposes.

---

[1] This section of the FCRA is currently located in the U.S. Code at 15 U.S.C. § 1681b(b)(2)(A).  The text remains the same as it was when the guidance was issued.

## ALLEGATIONS RELATING TO DEFENDANT'S BUSINESS PRACTICES

34.     Defendant conducts background checks on job applicants as part of its standard screening process.

35.     Defendant does not perform these background checks in-house. Rather, Defendant relies on outside consumer reporting agencies to obtain this information and report it to Defendant.   These reports constitute "consumer reports" for purposes of the FCRA and NJFCRA.

36.     Defendant uses GIS as its consumer reporting agency, and pays GIS money to receive background reports on prospective employees.

37.     For monetary fees, GIS regularly engages in whole or in part in the practice of assembling or evaluating consumer information for the purposes of furnishing consumer reports, and GIS is a "consumer reporting agency" within the meaning of the FCRA and NJFCRA.   GIS specializes in providing employment background check reports containing, among other types of information, criminal history information, to its clients including employers and prospective employers.

38.     GIS has provided its clients with a number of advisories related to the FCRA's stand-alone disclosure requirement.   In 2012, GIS issued an advisory which reminded its clients that "[f]undamentally, the message of an FCRA disclosure is 'we are going to get a background check about you.' Employers with information that is on their disclosure form and [sic] is not giving this fundamental

message should immediately **move that information to another form**."  Exhibit 4 (emphasis in original).  Furthermore, on May 1, 2014, GIS issued an advisory stating:

> A disclosure that a background check will be conducted must be given to the applicant or employee prior to the check being conducted. This disclosure must be in writing and in a document that consists **solely of the disclosure**. It should not be part of a printed employment application form, and it should not include a release of liability. The fundamental message of the disclosure is that "we will conduct a background check on you." **Any other information should be removed from the disclosure.**

Exhibit 5 (emphasis in original).

39.    The FCRA and NJFCRA requires that, prior to procuring consumer reports, employers must certify to the consumer reporting agency that they will comply with the FCRA's stand-alone disclosure requirements.  *See* 15 U.S.C. § 1681b(b)(1); N.J. Stat. Ann. § 56:11-31(b)(1)(a).

40.    In accordance with GIS's standard procedures, GIS required Defendant to certify that it would comply with the stand-alone disclosure provisions of the FCRA.

41.    Defendant did, in fact, certify to GIS that it would comply with the stand-alone disclosure provisions of the FCRA.

42.    In its contract with GIS, Defendant agreed that before obtaining a consumer report, Defendant would provide a disclosure in writing to the consumer

that a consumer report will be obtained for employment purposes and that such disclosure will be made in a document consisting solely of the disclosure.

43.   Defendant also agreed to contact GIS to obtain special procedures for preparation and use of a consumer report in the case of suspected misconduct or violation of state, federal, or local law.  Plaintiff's report was not procured by Defendant using the special procedures referred to in the contract for these kinds of reports.

44.   Defendant did not procure Plaintiff's report in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer.

45.   Despite the warnings it received from GIS, and the representations it made to GIS, Defendant failed to provide its applicants with a stand-alone disclosure.

46.   Defendant's practices violate a fundamental protection afforded to employees under the FCRA and NJFCRA, are contrary to the unambiguous language of the statute and are counter to longstanding judicial and regulatory guidance.  *See, e.g.* Exhibit 3 (Hauxwell, 1998) ("[T]he [disclosure] form should not contain any extraneous information").

47.   By systematically providing Plaintiff and other class members with

job applications which did not comply with the FCRA or NJFCRA, Defendant knowingly and willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i) and N.J. Stat. Ann. § 56:11-31(c)(1).

## CLASS ACTION ALLEGATIONS

48.    Plaintiff asserts Count I on behalf of the FCRA Class defined as follows:

> All individuals who applied to Michaels through an online application and on whom Michaels   procured a background check for employment purposes in the period beginning two years prior to the filing of the Complaint and continuing through the date the class list is prepared.

49.    Plaintiff asserts Count II on behalf of the NJFCRA Class defined as follows:

> All individuals who applied to Michaels through an online application on whom Michaels procured a background check for employment purposes in the period beginning six years prior to the filing of the Complaint and continuing through the date the class list is prepared whose report lists a New Jersey address as the address for the subject of the report.

50.    Numerosity: The classes are so numerous that joinder of all class members is impracticable.  Defendant regularly procures consumer reports on job applicants who submit their applications online.   Thousands of Defendant's prospective and existing employees nationwide satisfy the FCRA Class definition, and hundreds, if not thousands, of New Jersey residents satisfy the NJFCRA Class definition.

15

51.   <u>Typicality</u>: Plaintiff's claims are typical of the members of the classes.  Defendant typically uses the same job application forms for all applicants who apply online.  The FCRA and NJFCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendant treated Plaintiff consistent with other class members in accordance with its standard practices.

52.   <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the classes and has retained counsel experienced in complex class action litigation.

53.   <u>Commonality</u>:   Common questions of law and fact exist as to all members of the classes and predominate over any questions solely affecting individual members of the classes, including but not limited to:

      (a)   Whether Defendant procured consumer reports on prospective and existing employees;

      (b)   Whether Defendant violated the FCRA by procuring such consumer reports without a FCRA-compliant disclosure;

      (c)   Whether Defendant's FCRA violations were willful;

      (d)   Whether Defendant violated the NJFCRA by procuring consumer reports on New Jersey consumers without a NJFCRA-compliant disclosure;

      (e)   Whether Defendant's NJFCRA violations were willful;

      (f)   The proper measure of statutory damages; and

16

(g)     The proper measure of punitive damages.

54.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the classes predominate over any questions affecting only individual members of the classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA and NJFCRA.  Class certification will also preclude the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.  Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

55.     Plaintiff intends to send notice to all members of the classes to the extent required by Fed. R. Civ. P. 23.  The names and addresses of the class members are available from Defendant's records.

**<u>COUNT I</u>**
**<u>15 U.S.C. § 1681b(b)(2)</u>**
**<u>*Failure to Provide Stand-Alone Disclosure*</u>**
**<u>*On Behalf of Plaintiff and the FCRA Class*</u>**

56.     Defendant procured consumer reports, as defined by the FCRA, on Plaintiff and all FCRA Class members.   These reports were procured for

17

employment purposes without first providing Plaintiff or any FCRA Class member a clear and conspicuous disclosure made in writing, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes in violation of 15 U.S.C. § 1681b(b)(2)(A)(i).

57.    The foregoing violations were willful.  Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other FCRA Class members under 15 U.S.C. § 1681b(b)(2)(A)(i).  Defendant's willful conduct is reflected by, *inter alia*, the following:

> (a)    The FCRA was enacted in 1970; Defendant, which was founded in 1976, has had almost 40 years to become compliant;

> (b)    Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

> (c)    Defendant knew or had reason to know from its communications with GIS that Defendant's conduct violated the FCRA;

> (d)    Defendant certified to GIS that it would comply with the disclosure requirements of the FCRA but failed to do so;

(e)     Defendant repeatedly and routinely uses the online job application it used with Plaintiff prior to procuring consumer reports;

(f)     Defendant's inclusion of a liability release in its job application clearly indicates awareness by Defendant that it could be held liable for improperly procuring a consumer report and represents an effort to avoid such liability;

(g)     Despite the pellucid statutory text and there being a depth of guidance, Defendant systematically procured consumer reports without first disclosing in writing to the consumer *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and

(h)     By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

58.     Plaintiff and the FCRA Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

59.     Plaintiff and the FCRA Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

60.     Plaintiff and the FCRA Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT II
### N.J. Stat. Ann. § 56:11-31(c)(1)
### *Failure to Provide Stand-Alone Disclosure*
### *On Behalf of Plaintiff and the NJFCRA Class*

61.     Defendant repeatedly violated the NJFCRA by procuring consumer reports on Plaintiff and NJFCRA Class members without making the stand-alone disclosure required by the NJFCRA.  *See* N.J. Stat. Ann. § 56:11-31(c)(1).

62.     The foregoing violations were willful.  Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other NJFCRA Class members under N.J. Stat. Ann. § 56:11-31(c)(1).  Defendant's willful conduct is reflected by, *inter alia*, the following:

> a.     The NJFCRA was enacted in 1997.  Defendant has had over 15 years to comply.

> b.     Defendant's conduct is inconsistent with the plain language of the statute, and longstanding FTC and judicial guidance about 15 U.S.C. § 1681b(b)(2), which is identical to the NJFCRA provision at issue;

> c.     Defendant knew or had reason to know from its communications with GIS that Defendant's conduct violated the NJFCRA;

d.  Defendant certified to GIS that it would comply with the disclosure requirements of the FCRA, which are identical to the NJFCRA requirements;

e.  Defendant repeatedly and routinely uses the disclosure it used with Plaintiff to procure consumer reports;

f.  Despite the pellucid statutory text and a depth of guidance, Defendant systematically procured consumer reports without first disclosing in writing to the consumer *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes;

g.  Defendant knowingly benefitted from its unlawful conduct by making it easier to obtain information for its reports; and

h.  By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

63.  Plaintiff and the NJFCRA Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to N.J. Stat. Ann. § 56:11-38(a)(1).  Plaintiff and the NJFCRA Class members are also entitled to punitive damages for these violations, pursuant to N.J. Stat. Ann. § 56:11-38(a)(2).  Plaintiff and the NJFCRA Class members are

further entitled to recover their costs and attorneys' fees, pursuant to N.J. Stat. Ann. § 56:11-38(a)(3).

## PRAYER FOR RELIEF

64.     WHEREFORE, Plaintiff, on behalf of herself and the classes, prays for relief as follows:

        (a)     Determining that this action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

        (b)     Designating Plaintiff as Class Representative and designating Plaintiff's Counsel as counsel for the classes;

        (c)     Issuing proper notice to the classes at Defendant's expense;

        (d)     Declaring that Defendant committed multiple, separate violations of the FCRA and NJFCRA;

        (e)     Declaring that Defendant acted willfully, in deliberate or reckless disregard of Plaintiff's and class members' rights and Defendant's obligations under the FCRA and NJFCRA;

        (f)     Awarding statutory and punitive damages as provided by the FCRA and NJFCRA;

        (g)     Awarding reasonable attorneys' fees and costs as provided by the FCRA and NJFCRA; and

(h)   Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

65.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the classes demand a trial by jury.

SCHALL & BARASCH, LLC

Date: December 4, 2014          /s/Patricia A. Barasch
                                Patricia A. Barasch, NJ Bar No. 0055480
                                Moorestown Office Center
                                110 Marter Ave, Suite 302
                                Moorestown, NJ 08057
                                Telephone: 856.914.9200
                                Facsimile: 856.914.9420
                                pbarasch@schallandbarasch.com

                                NICHOLS KASTER, PLLP
                                E. Michelle Drake, MN Bar No. 0387366*
                                Joseph C. Hashmall, MN Bar No. 0392610*
                                4600 IDS Center
                                80 South 8th Street
                                Minneapolis, MN 55402
                                Telephone: 612-256-3200
                                Fax: 612-338-4878
                                drake@nka.com
                                jhashmall@nka.com

                                GOTTLIEB & ASSOCIATES
                                Jeffrey M. Gottlieb, NY Bar No. JG-7905*
                                Dana L. Gottlieb, NY Bar No. DG-6151*
                                150 East 18th Street, Suite PHR
                                New York, NY 10003
                                Telephone: 212.228.9795
                                Facsimile: 212.982.6284

nyjg@aol.com
danalgottlieb@aol.com

*pro hac vice* applications forthcoming

ATTORNEYS   FOR   PLAINTIFF   AND
THE PUTATIVE CLASSES