Keith J. Miller
**ROBINSON MILLER LLC**
One Newark Center, 19th Floor
Newark, NJ 07102
Telephone No.: (973) 690-5400
Facsimile No.: (973) 466-2760
Kmiller@rwmlegal.com

Robert T. Szyba                          Pamela Q. Devata (*Pro Hac Vice*)
**SEYFARTH SHAW LLP**                    **SEYFARTH SHAW LLP**
620 Eighth Avenue                        131 South Dearborn Street, Suite 2400
New York, New York 10018                 Chicago, IL 60603-5577
Phone: 212-218-5500                      Phone: (312) 460-5000
Fax: 917-344-1174                        Fax: (312) 460-7000
rszyba@seyfarth.com                      pdevata@seyfarth.com

*Attorneys for Defendant*
*Michaels Stores, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: MICHAELS STORES, INC. FAIR CREDIT REPORTING ACT (FCRA) LITIGATION | MDL No. 2615<br><br>In connection with:<br>No. 2:14-cv-7563-KM-JBC<br>No. 2:15-cv-2547-KM-JBC<br>No. 2:15-cv-5504-KM-JBC<br><br>**Motion Date:** September 6, 2016<br><br>[ORAL ARGUMENT REQUESTED] |

## DEFENDANT MICHAELS STORES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS CONSOLIDATED MOTION TO DISMISS ALL CENTRALIZED CIVIL ACTIONS UNDER MDL NO. 2615

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................2

STATEMENT OF FACTS ................................................................................5

I.      The Parties. ........................................................................................5

        A.      Michaels. ..............................................................................5

        B.      The Plaintiffs. .......................................................................5

II.     Plaintiffs Were Provided With A Clear And Conspicuous, Stand-
        Alone Disclosure Of A Background Check That They Each
        Authorized. ........................................................................................6

III.    Plaintiffs Agreed To Waive Their Claims For Damages In Exchange
        For Use Of The PeopleAnswers/Infor Online Application Platform. ............7

IV.     Each Plaintiff Was Hired and Suffered No Adverse Action or
        Concrete Harm. ..................................................................................8

V.      This Litigation. ..................................................................................9

ARGUMENT ..............................................................................................11

I.      The Court Lacks Subject Matter Jurisdiction To Adjudicate
        Plaintiffs' Claims. .............................................................................11

        A.      Standard For Dismissal Under Rule 12(b)(1). ...................................11

        B.      Plaintiffs Have Not Alleged Any Concrete Injury-In-Fact And
                Thus Lack Standing. ................................................................12

        C.      Plaintiffs Have Not Suffered Any Concrete "Informational
                Harm" And Thus Lack Standing. ..................................................19

II.     Under Rule 12(b)(6), Plaintiffs Fail To State A Claim Upon Which
        Relief Can Be Granted. .......................................................................22

        A.      Standard For Dismissal Under Rule 12(b)(6). ...................................22

        B.      Michaels Provided A Clear And Conspicuous Stand-Alone
                Disclosure And Complied With The FCRA And NJFCRA. .............23

        C.      Plaintiffs Fail To Establish A "Willful" Violation Of The
                FCRA And NJFCRA. .................................................................30

                1.      Plaintiffs' Fall Short Of Meeting Threshold Pleading
                        Requirements Under Fed. R. Civ. P. 8. ..............................30

                2.      Plaintiffs Fail To Establish A Willful Violation Of The
                        FCRA And NJFCRA As A Matter Of Law. ........................33

i

i.     The Applicable "Willfulness" Standard. ........................33

ii.    Defendant's Interpretation Was Not "Objectively Unreasonable" In Light Of Unclear Statutory Language. ........................................................................35

iii.   Michaels Interpretation Was Not "Objectively Unreasonable" In Light Of A Lack Of Binding Judicial Authority, Conflicting District Court Decisions, And Non-Authoritative Opinion Letters And Newsletters. ....................................38

D.   Plaintiffs Contractually Waived Their Rights To Assert Claims Arising From The Investigations Into Their Respective Backgrounds. ....................................................45

E.   Plaintiff Janice Bercut's UCL Claim As A Matter Of Law Because Her Claim For Injunctive Relief Is Preempted By The FCRA. ........................................................................46

CONCLUSION ........................................................................48

27279527v.14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ALA, Inc. v. CCAIR, Inc.*,
    29 F.3d 855 (3d Cir. 1994) ...............................................................................23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................22, 23, 30, 32

*Avila v. NOW Health Grp., Inc.*,
    No. 14-cv-1551,
    2014 WL 3537825 (N.D. Ill. July 17, 2014) ....................................................40

*Ballentine v. U.S.*,
    486 F.3d 806 (3d Cir. 2007) ........................................................................11, 12

*Beneventine v. Siemens Hearing Instruments, Inc.*,
    2012 WL 6554264 (App. Div. 2012).................................................................45

*Burghy v. Dayton Racquet Club, Inc.*,
    695 F. Supp. 2d 689 (S.D. Ohio 2010) ..................................................37, 39, 42

*Cal. Water & Telephone Co. v. Cnty. of Los Angeles*,
    253 Cal. App. 2d 16 (Cal. App. Ct. 1967)........................................................18

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016)........................................................................................47

*Chabner v. United Omaha Life Ins. Co.*,
    225 F.3d 1042 (9th Cir. 2000) .........................................................................46

*Coleman v. Kohl's Dep't Stores, Inc.*,
    No. 15-cv-02588,
    2015 WL 5782352 (N.D. Cal. Oct. 5, 2015) ...............................................26, 28

*Connelly v. PNC Bank, N.A.*,
    No. A-2007-06T1,
    2008 WL 2167831 (App. Div. May 27, 2008) .................................................46

*Cortez v. Purolator Air Filtration Prods. Co.*,
    23 Cal. 4th 163 (Cal. 2000)..............................................................................46

*D.G. v. Somerset Hills Sch. Dist.*,
    559 F. Supp. 2d 484 (D.N.J. 2008) ................................................................11, 12

*Dicesari v. Asset Acceptance LLC*,
    No. 11-cv-6815,
    2012 WL 4108944 (E.D. Pa. Sept. 18, 2012) ......................................................47

*Doe v. Nat'l Bd. Of Med. Examiners*,
    199 F.3d 146 (3d Cir. 1999) ..................................................................................15

*Dunford v. Am. DataBank, LLC*,
    64 F. Supp. 3d 1378, 1385 (N.D. Cal. 2014) ......................................................40

*Fair Hous. Council v. Main Line Times*,
    141 F.3d 439 (3d Cir. 1998) ..................................................................................15

*Fed. Election Comm'n v. Akins*,
    524 U.S. 11 (1998)..................................................................................19, 20, 21

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ..................................................................................23

*Fuges v. Sw. Fin. Servs., Ltd.*,
    707 F.3d 241 (3d Cir. 2012) ....................................................................33, 34, 35

*Goldberg v. Uber Techs., Inc.*,
    No. 14-cv-14264,
    2015 WL 1530875 (D. Mass. Apr. 6, 2015)..........................................................41

*Gould Elecs. Inc., v. U.S.*,
    220 F.3d 169 (3d Cir. 2000) ..................................................................................12

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005)................................................................................................22

*Groshek v. Great Lakes Higher Educ. Corp.*,
    No. 15-cv-143,
    2015 WL 7294548 (W.D. Wis. Nov. 16, 2015) ..................................................41

*Gubala v. Time Warner Cable, Inc.*,
    No. 15-cv-1078-PP (E.D. Wis. June 17, 2016) ..................................................15

iv

*Hamilton v. DirecTV, Inc.*,
    642 F. Supp. 2d 1304 (M.D. Ala. 2009) ............................................................47

*Hojnowski v. Vans Skate Park*,
    187 N.J. 323 (2006) .........................................................................................44

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
    No. 13-4300,
    2015 WL 6875340 (3d Cir. Nov. 10, 2015) ................................................21, 22

*In re Horizon Healthcare Servs., Inc. Data Breach Litig.*,
    13-cv-7418-CCC,
    2015 WL 1472483 (D.N.J. Mar. 31, 2015) ................................................16, 17

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
    No. MDL 2360,
    2014 WL 1858458 (D.D.C. May 9, 2014) .........................................................17

*Joint Stock Soc'y v. UDV N. Am., Inc.*,
    266 F.3d 164 (3d Cir. 2001) ..............................................................................15

*Just v. Target Corp.*,
    No. 15-cv-4117,
    2016 WL 2757370 (D. Minn. May 12, 2016) .............................................40, 41

*Komorowski v. All-Am. Indoor Sports, Inc.*,
    No. 13-cv-2177,
    2013 WL 4766800 (D. Kan. Sept. 4, 2013).......................................................32

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (Cal. 2011).............................................................................18

*Lascaris v. Griffin Investigations, Inc.*,
    No. 03-cv-2172-JAG,
    2006 WL 54342 (D.N.J. Jan. 10, 2006)...........................................................16

*Lightfoot v. U.S.*,
    564 F.3d 625 (3d Cir. 2009) ............................................................................12

*Long v. Tommy Hilfiger U.S.A.*,
    671 F.3d 371 (3d Cir. 2012) ....................................................................33, 34

v

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................19

*Manuel v. Wells Fargo Bank, Nat. Ass'n*,
   123 F. Supp. 3d 810 (E.D. Va. 2015) .................................................................21

*Martin v. Fair Collections & Outsourcing, Inc.*,
   No. 14-cv-3191,
   2015 WL 4064970 (D. Md. June 30, 2015) ......................................................41

*Milbourne v. JRK Residential Am., LLC*,
   No. 12-cv-861,
   2015 WL 1120284 (E.D. Va. Mar. 11, 2015) ...................................................41

*Miller v. Sunoco, Inc.*,
   No. 07-cv-1456,
   2008 WL 623806 (E.D. Pa. Mar. 4, 2008) .......................................................47

*Millett v. Ford Motor Credit Co.*,
   No. 04-cv-2450-CM,
   2006 WL 1301160 (D. Kan. May 9, 2006) .......................................................47

*Moran v. Screening Pros, LLC*,
   No. 12-cv-05808,
   2012 WL 10655744 (C.D. Cal. Sept. 28, 2012) ................................................47

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
   549 F.2d 884 (3d Cir. 1977) ......................................................................11, 12

*Newton v. Bank of Am.*,
   No. 2:14-cv-03714,
   2015 WL 10435907 (C.D. Cal. May 12, 2015) ...........................................26, 29

*Panzer v. Swiftships, LLC*,
   No. 15-2257,
   2015 U.S. Dist. LEXIS 144200 (E.D. La. Oct. 23, 2015) .................................21

*Peikoff v. Paramount Pictures Corp.*,
   No. 15-cv-0068 (N.D. Cal. Mar. 25, 2015) .......................................................41

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
   998 F.2d 1192 (3d Cir. 1993) ...........................................................................23

*Peters v. St. Joseph Servs. Corp.*,
  74 F. Supp. 3d 847, 853 (S.D. Tex. 2015)..........................................................17

*Polanco v. Omnicell, Inc.*,
  988 F. Supp. 2d 451 (D.N.J. 2013)....................................................................17

*Poulson v. Trans Union, LLC*,
  370 F. Supp. 2d 592 (E.D. Tex. 2005)...............................................................47

*Pryor v. NCAA*,
  288 F.3d 548 (3d Cir. 2002) .............................................................................23

*Pub. Citizen v. U.S. Dep't of Justice*,
  491 U.S. 440 (1989)..........................................................................................20

*Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*,
  123 F.3d 111 (3d Cir. 1997) .............................................................................12

*Quadrant Info. Servs., LLC v. LexisNexis Risk Solutions, Inc.*,
  No. 1-cv-6648 SBA,
  2012 WL 3155559 (N.D. Cal. Aug. 2, 2012) ....................................................47

*Reardon v. ClosetMaid Corp.*,
  No. 08-cv-01730,
  2013 WL 6231606 (W.D. Pa. Dec. 2, 2013) ................................................passim

*Reed v. Swatch Grp. (US), Inc.*,
  No. 14-cv-896-ES,
  2014 WL 7370031 (D.N.J. Dec. 29, 2014).........................................................32

*Robrinzine v. Big Lots Stores, Inc.*,
  No. 15-cv-7239,
  2016 WL 212957 (N.D. Ill. Jan. 19, 2016)........................................................41

*Ryals v. Strategic Screening Sols., Inc.*,
  117 F. Supp. 3d 746 (E.D. Va. 2015) ................................................................21

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47 (2007)......................................................................................passim

*Schoebel v. Am. Integrity Ins. Co. of Florida*,
  No. 8:15-cv-380-T-24 AEP,
  2015 WL 3407895 (M.D. Fla. May 27, 2015) ............................................39, 42

vii

*Shlahtichman v. 1-800 Contacts, Inc.*,
   615 F.3d 794 (7th Cir. 2010) ..............................................................34

*Singleton v. Domino's Pizza, LLC*,
   No. 11-cv-1823-DKC,
   2012 WL 245965 (D. Md. Jan. 25, 2012)................................39, 41, 42

*Slack v. Suburban Propane Partners, L.P.*,
   No. 10-cv-2548-JLL,
   2010 WL 3810870 (D.N.J. Sept. 21, 2010).........................................16

*Smith v. Waverly Partners, LLC*,
   No. 10-cv-00028,
   2012 WL 3645324 (W.D. N.C. Aug. 23, 2012) ...............................37, 39, 42, 43

*Spokeo, Inc. v. Robins*,
   135 S. Ct. 323 (Oct. 6, 2014)..............................................................10

*Spokeo, Inc. v. Robins*,
   578 U.S. ____, 136 S. Ct. 1540 (2016).......................................passim

*Storino v. Borough of Point Pleasant Beach*,
   322 F.3d 293 (3d Cir. 2003) ...............................................................13

*Syed v. M-I LLC*,
   No. 14-cv-742-WBS,
   2014 WL 5426862 (E.D. Cal. Oct. 23, 2014)...................................38, 40, 42, 43

*Texter v. Merlina*,
   No. 04-cv-0173,
   2005 WL 1513117 (M.D. Pa. June 27, 2005) *aff'd*,
   333 F. App'x 680 (3d Cir. 2009) ........................................................31

*Van Tassel v. Lawrence Cnty. Domestic Relations Section*,
   659 F. Supp. 2d 672 (W.D. Pa. 2009) *aff'd sub nom.*,
   390 F. App'x 201 (3d Cir. 2010) ........................................................31

*Washington v. CSC Credit Servs., Inc.*,
   199 F.3d 263 (5th Cir. 2000) ..............................................................46

*Weiss v. Regal Collections*,
   385 F.3d 337 (3d Cir. 2004) ...............................................................47

viii

STATUTES

Fair Credit Reporting Act, 15 U.S.C. § 1681a(d)-(e) .........................................28, 37

Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(2)(A) ......................26, 35, 38, 42

Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(2)(A)(i)...................25, 38, 39, 40

Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(2)(A)(ii)...................................35

Fair Credit Reporting Act, 15 U.S.C. § 1681n(a) .................................................30

Fair Credit Reporting Act, 15 U.S.C. § 1681s(a) .................................................46

Federal Election Campaign Act of 1971...........................................................19, 20

Freedom of Information Act ...............................................................................20

Cal. Civ. Code § 1786.16(a)(2)(b)(iv) ............................................................28, 37

Cal. Civ. Code § 1786.16(a)(2)(b)(vi) ..................................................................28

Cal. Civ. Code § 1786.20(d) .................................................................................28

N.J.S.A. § 56:11-29(e) ..........................................................................................23

N.J.S.A. § 56:11-38(a) ..........................................................................................30

OTHER AUTHORITIES

U.S. Constitution, Article III.........................................................................passim

Fed. R. Civ. P. 8.............................................................................................30, 31

Fed. R. Civ. P. 8(a)(2)............................................................................................22

Fed. R. Civ. P. 12(b)(1).................................................................................1, 10, 11

Fed. R. Civ. P. 12(b)(6).................................................................................passim

On May 17, 2016, this Court directed the parties in this litigation to resubmit their motions in light of the U.S. Supreme Court decision in *Spokeo, Inc. v. Robins*, 578 U.S. ____, 136 S. Ct. 1540 (2016), which held that a plaintiff seeking to sue in federal court must show that he or she suffered a concrete injury that is "real," and not simply a "bare procedural violation, divorced from any concrete harm."  (ECF No. 94); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).  Plaintiffs in this litigation have failed to establish a concrete injury, and therefore, under Article III of the U.S. Constitution, this Court lacks subject matter jurisdiction.  Even if Plaintiffs could establish that they have standing, which they cannot, their claims would nevertheless fail on the merits under Rule 12(b) of the Federal Rules of Civil Procedure.

Accordingly, Defendant Michaels Stores, Inc. ("Michaels" or "Defendant"), by and through its attorneys, Seyfarth Shaw LLP and Robinson Miller LLC, and pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), submits its Memorandum Of Law In Support Of Its Consolidated Motion To Dismiss All Centralized Civil Actions Under MDL No. 2516 in their entirety.[1]

---

[1]     This centralized action consists of the following civil complaints: *Christina Graham and Gray Anderson v. Michaels Stores, Inc.*, No. 2:14-cv-07563, filed on February 5, 2015 in the U.S. District Court for the District of New Jersey (*See* ECF No. 32) (hereafter cited as "Graham FAC"); *Michele Castro and Janice Bercut v. Michaels Stores, Inc.*, No. 3:15-cv-0276, filed on March 16, 2015 in the U.S. District Court for the Northern District of Texas (*See* ECF No. 16) (hereafter cited as "J. Bercut FAC"); *Michelle Bercut v. Michaels Stores, Inc.*, No. 2:15-cv-05504, filed on June 8, 2015 in the Superior Court of California, Sonoma County (*See* ECF No. 1, Ex. A) (hereafter cited as "M. Bercut Compl.").  The facts herein, which are taken as true for

## PRELIMINARY STATEMENT

Currently before this Court is a centralized action involving four named Plaintiffs with three separate civil actions, which suffer from the same legal and factual deficiencies.  Plaintiffs Christina Graham, Gary Anderson, and Michelle Bercut are all former employees of Michaels.  Plaintiff Janice Bercut is a current Michaels employee.  Plaintiff Graham worked for Michaels in New Jersey for several months in 2014, until she voluntarily left her employment.  Plaintiff Anderson worked for Michaels in California for over a year from August 2013 to October 2014.  Plaintiff Michelle Bercut worked for Michaels in California from October 2014 to at least January 2015.  Plaintiff Janice Bercut began her employment with Michaels in the fall of 2013 and currently works for Michaels in California.

As part of their employment with Michaels, each Plaintiff agreed to, and submitted to, a background check.  Plaintiffs now bring their lawsuits, all putative class actions, against Michaels based on allegations of technical violations of the federal Fair Credit Reporting Act ("FCRA") relating to the specific form of notice each Plaintiff received of his or her respective background check.  Plaintiff Graham additionally alleges a violation of the New Jersey Fair Credit Reporting

---

the purpose of this motion only, are based on the facts alleged in Plaintiffs' respective operative complaints.

Act ("NJFCRA") unique to her. For these alleged bare procedural violations, Plaintiffs seek statutory and punitive damages, as well as attorneys' fees and costs.

Importantly, however, Plaintiffs allege no adverse action that was taken against them by Michaels and no concrete injury or harm relating to their employment. All Plaintiffs were informed that a background check would be conducted, all authorized their respective background checks, all were hired, and all worked, or continue to work, for Michaels *without any negative consequence or impact resulting from their respective background checks*.

Rather, Plaintiffs' sole claim is that Michaels actions constitute a technical violation of the FCRA, alleging that they did not receive what they believe is a lawful, statutorily-required disclosure before their background checks were conducted. None of the Plaintiffs have even remotely alleged a concrete injury-in-fact for this Court to redress—no lost income, no lost job, no lack of opportunity—nothing other than an alleged procedural harm. As such, they lack standing to bring their claims under *Spokeo*.

And even if they did have standing, which they do not, Plaintiffs fail to state a claim. They omit allegations of damages necessary to state a claim, and allege facts that directly contradict the elements they are required to plead. For example, Plaintiffs openly admit that they were hired by and worked for Michaels, and that the disclosure form that they were provided made them aware that Michaels would

3

perform a background check.  Further, the background checks that were performed resulted in no adverse consequence upon any Plaintiff.  In addition, the document labeled as Exhibit 1 to each Plaintiff's respective complaint shows the exact "clear and conspicuous" disclosure that was provided to each of them.  Despite Plaintiffs' insistence to the contrary, these disclosures demonstrate Michaels compliance with the governing statutory requirements.

Further, even if the disclosure is somehow insufficient, which it is not, Plaintiffs cannot establish that Michaels conduct was objectively unreasonable and therefore a willful violation under the U.S. Supreme Court's ruling in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).

Also, Plaintiffs knowingly and intentionally agreed to a clear and unambiguous waiver of all claims against Michaels arising from their use of the PeopleAnswers/Infor online application platform under PeopleAnswers/Infor's Terms of Use.  As a result, Plaintiffs' claims are barred.

Finally, to the extent Plaintiff Janie Bercut's claim for injunctive relief under the California's Unfair Competition Law ("UCL") survives, it is preempted by the FCRA.

Based on any of these independent, yet fatal grounds, this Court should dismiss Plaintiffs' claims in full and with prejudice.

## <u>STATEMENT OF FACTS</u>

**I.    The Parties.**

        **A.    Michaels.**

Michaels is North America's largest specialty retailer of arts, crafts, framing, home décor, and seasonal products.  (*See* Graham FAC ¶ 14; J. Bercut FAC ¶ 17; Bercut Compl. ¶ 31).  Michaels contracts with a third-party vendor, Infor, formerly known as PeopleAnswers, to host and otherwise maintain an online job application platform, which was in operation from around August 2013 to October 2014.  (*See* Marker Decl. ¶ 3-8).[2]  As part of the application process, Michaels uses another third-party vendor, General Information Services, Inc. ("GIS"), to procure background checks in connection with its investigation of job applicants for Michaels.  (*See* Graham FAC ¶ 41-44, J. Bercut FAC ¶ 54; Bercut Compl. ¶ 43; Marker Decl. ¶ 11).

        **B.    The Plaintiffs.**

Plaintiff Graham applied for a job with Michaels in or around June 2014, and was hired.  (*See* Graham FAC ¶ 24).  Plaintiff Graham voluntarily left her employment with Michaels "after several months" for reasons unrelated to the allegations in this litigation. (*See id.*).

---

[2]      Declaration of Doug Marker in Support of Defendant Michaels Stores, Inc.'s Consolidated Motion to Dismiss All Centralized Civil Actions Under MDL No. 2615, dated June 22, 2016, is appended hereto and is hereafter cited as "Marker Decl."

Plaintiff Anderson applied for job with Michaels in or about August 2013, and was hired as a framing expert.  (*See* Graham FAC ¶ 37, 40).  Plaintiff Anderson worked for fourteen months until his employment ended.  (*See id.*).

Plaintiff Janice Bercut applied for a job at Michaels in or around the fall of 2013 in California, was hired, and remains currently employed by Michaels. (*See* J. Bercut FAC ¶ 19).

Plaintiff Michelle Bercut applied for a job at Michaels in or about October 2014, was hired, and worked for Michaels for approximately five months until her employment ended for reasons unrelated to the allegations in this litigation.  (*See* M. Bercut Compl. ¶ 32).

## II. Plaintiffs Were Provided With A Clear And Conspicuous, Stand-Alone Disclosure Of A Background Check That They Each Authorized.

During the process of applying for their respective jobs at Michaels, each Plaintiff was guided through an online platform, which consisted of several web pages and required each Plaintiff to scroll-through and complete several sections that asked for a variety of personal and biographical information.  (*See* Graham FAC ¶ 25, 38 & Ex. 1; J. Bercut FAC ¶ 19, 22 & Ex. 1; M. Bercut Compl. ¶ 32, 34 & Ex. 1 ¶).

In the section captioned "Background Check Package Overview & Instructions," Plaintiffs were provided with various required notices of federal and state laws, as well as a clear and conspicuous, separate stand-alone printable copy

6

of a "Disclosure" form and "A Summary of Your Rights Under the Fair Credit Reporting Act."  (*See* Graham FAC Ex. 1; J. Bercut FAC Ex. 1; M. Bercut Compl. Ex. 1; Marker Decl. ¶ 11 & Ex. B).  This disclosure was provided via a hyperlink that was clearly and conspicuously displayed in bright blue text to set it apart from the rest of the black text on the screen.  (*See* Marker Decl. ¶ 10-11).  This disclosure specifically and separately advised Plaintiffs of the upcoming investigation into his/her background.  (*See* Marker Decl. ¶ 11 & Ex. B).

Below the area that included the hyperlinked disclosure, each Plaintiff was asked to enter additional biographical information and to authorize the investigation into his and her background for employment purposes, which each Plaintiff completed.  (*See* Graham FAC Ex. 1, J. Bercut FAC Ex. 1, M. Bercut Compl. Ex. 1¶).

## III. Plaintiffs Agreed To Waive Their Claims For Damages In Exchange For Use Of The PeopleAnswers/Infor Online Application Platform.

Before using the PeopleAnswers/Infor's online application platform, all Plaintiffs were required to review and agree to the Terms of Use.  (*See* Marker Decl. ¶ 9).  The Terms of Use are found on the PeopleAnswers/Infor's platform, both in a text box that the user must scroll through prior to proceeding to the application process, and in a hyperlink at the bottom of the page that provides a printable copy.  (*See* Graham FAC Ex. 1, J. Bercut FAC Ex. 1, M. Bercut Compl. ¶ Ex. 1; Marker Decl. ¶ 9).  Each Plaintiff necessarily clicked "I Agree," and thus

7

accepted the Terms of Use to complete the application process.  (*See* Marker Decl.

¶ 9 & Ex. A).  The Terms of Use provide, in pertinent part:

> UNDER NO CIRCUMSTANCES AND UNDER NO LEGAL
> THEORY (TORT, CONTRACT, OR OTHERWISE) SHALL
> PEOPLEANSWERS OR ITS LICENSORS BE LIABLE TO YOU
> OR ANY OTHER PERSON FOR ANY DAMAGES RESULTING
> FROM YOUR USE OF THE SITE OR THE SERVICE, WHETHER
> DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR
> CONSEQUENTIAL, INCLUDING WITHOUT LIMITATION ANY
> ACTIONS TAKEN BY ANY CLIENT-EMPLOYER . . . . UNDER
> NO CIRCUMSTANCES AND UNDER NO LEGAL THEORY
> (TORT, CONTRACT, OR OTHERWISE) SHALL ANY CLIENT-
> EMPLOYER BE LIABLE TO YOU OR ANY OTHER PERSON
> FOR ANY DAMAGES RESULTING FROM PEOPLEANSWER'S
> OPERATION OF THE SITE OR THE SERVICE, WHETHER
> DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR
> CONSEQUENTIAL.

(*See* Marker Decl. Ex. A).

## IV.   Each Plaintiff Was Hired and Suffered No Adverse Action or Concrete Harm.

Michaels received a background check for each Plaintiff in connection with their respective applications for employment with Michaels.  (*See* Graham FAC ¶ Ex. 2; Marker Decl. Exs. C-E).  No Plaintiff alleges that Michaels took any adverse action against them relating their background check, or that they suffered any injury based on the disclosure form that was given to them.  Indeed, Plaintiff Graham voluntarily left her employment after several months, and Plaintiff Anderson worked for approximately fourteen months until his employment ended.  (*See* Graham FAC ¶¶ 24 & 40).   Plaintiff Michelle Bercut worked for

approximately five months until the end of her employment.  (M. Bercut Compl. ¶ 32).  Plaintiff Janice Bercut is currently employed by Michaels.  (*See* J. Bercut FAC ¶ 19).  No Plaintiff alleges that the background checks affected any decisions related to the ending of their employment.

## V.      This Litigation.

Plaintiff Graham first filed her Complaint on December 4, 2014, asserting claims under the FCRA and NJFCRA.  (*See* Civil Action No. 2:14-cv-7563, ECF No. 1).  On February 5, 2015, the First Amended Complaint was filed, adding Plaintiff Anderson and his sole FCRA claim.  (*See* Civil Action No. 2:14-cv-7563, ECF No. 32).

Plaintiff Castro first filed her Complaint on January 28, 2015, asserting claims under the FCRA and California's UCL.  (*See* Civil Action No. 2:15-cv-2547, ECF No. 1).  On March 16, 2015, the First Amended Complaint was filed, adding Plaintiff Janice Bercut, and becoming the presently operative complaint. (*See* Civil Action No. 2:15-cv-2547, ECF No. 16).

On March 17, 2015, Plaintiff Michele Castro accepted Michaels offer of full satisfaction and resolution of her claims.  (*See* Civil Action No. 2:15-cv-2547-KM-JBC, ECF No. 17).[3]

---

[3]      As of the filing of the instant motion, Plaintiff Michele Castro and Michaels are have reached agreement and are finalizing a mutually-agreeable resolution of her claims, and anticipate filing a joint stipulation of voluntary dismissal of all of her claims against Michaels. As a result, Plaintiff Michele Castro's claims are not addressed in the instant motion.

On April 2, 2015, the Judicial Panel on Multidistrict Litigation issued an order centralizing the pending cases in the U.S. District Court for the District of New Jersey.  (MDL Civil Action No. 2615, ECF No. 26).

On June 8, 2015, Plaintiff Michelle Bercut filed her Complaint in the Superior Court of the State of California, Sonoma County, asserting claims under the FCRA.  (*See* Civil Action No. 2:15-cv-5504-KM-JBC, ECF No. 1, Ex. A). Plaintiff Michelle Bercut's state court action was removed to the U.S. District Court for the Northern District of California (*Id.*) and later centralized into the current action pursuant to a Transfer Order from the Judicial Panel on Multidistrict Litigation.  (*See* 2:15-cv-5504-KM-JBC, ECF No. 14).

In response to each civil complaint, Michaels filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) for substantially similar jurisdictional and substantive grounds that are asserted in this Motion.[4]  On March 14, 2016, this Court issued a Memorandum Opinion and Order, which, among other things, administratively terminated Michaels motions to dismiss and stayed the centralized action pending the United States Supreme Court's decision in *Spokeo, Inc. v. Robins*, 135 S. Ct. 323 (Oct. 6, 2014).  (*See* Civil Action No. 2:14-cv-7563, ECF

---

[4]      Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint, ECF No. 38 in *Graham v. Michaels Stores, Inc.*, Civil Action No. 2:14-cv-7563-KM-JBC; Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 18 in *Castro v. Michaels Stores, Inc.*, Civil Action No. 2:15-cv-2547-KM-JBC; & Defendant's Motion to Dismiss Plaintiff's Class Action Complaint, ECF No. 22 in *Bercut v. Michaels Stores, Inc.*, Civil Action No. 2:15-cv-5504-KM-JBC.

No 92).  On May 16, 2016, the United States Supreme Court issued its ruling in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

On May 17, 2016, this Court issued an order directing the parties to reformulate and resubmit their motions within 30 days in light of the Supreme Court's decision *Spokeo*.  (*See* Civil Action No. 2:14-cv-7563, ECF No. 94).

## **ARGUMENT**

### I.    **The Court Lacks Subject Matter Jurisdiction To Adjudicate Plaintiffs' Claims.**

A.    Standard For Dismissal Under Rule 12(b)(1).

Under Federal Rule of Civil Procedure 12(b)(1), a motion to dismiss challenges the existence of a federal court's subject matter jurisdiction.  *Ballentine v. U.S.*, 486 F.3d 806, 811 (3d Cir. 2007).  A motion under Rule 12(b)(1) may either: (1) "attack the complaint on its face," or (2) "attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings."  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A facial challenge argues, "that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction."  *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 491 (D.N.J. 2008).  Courts "must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party."  *Ballentine*, 486 F.3d at 810 (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

11

A factual attack challenges "the jurisdictional allegations set forth in the complaint." *D.G.*, 559 F. Supp. 2d at 491.  On a factual attack, no presumption of truthfulness attaches to the complaint, and there is no construction in the plaintiffs' favor.  *Mortensen*, 549 F.2d at 891.  The court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," including a review of evidence outside the pleadings.  *Mortensen*, 549 F.2d at 891; *Gould Elecs. Inc., v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000).  In fact, a factual challenge can take place at any stage in the litigation, including before an answer is filed.  *D.G.*, 559 F. Supp. 2d at 491.  Regardless of which approach the Court adopts, Plaintiffs bear the burden of proving that jurisdiction exists.  *Lightfoot v. U.S.*, 564 F.3d 625, 627 (3d Cir. 2009) (citing *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000)); *Mortensen*, 549 F.2d at 891.

> B.     **Plaintiffs Have Not Alleged Any Concrete Injury-In-Fact And Thus Lack Standing.**

"Standing is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997) (internal citations omitted).  "If plaintiffs do not possess Article III standing . . . the District Court . . . lack[s] subject matter jurisdiction to address the merits of plaintiffs' case." *Storino  v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (citation omitted).

12

To establish the "irreducible constitutional minimum" of standing, a plaintiff must establish: (1) an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  *Spokeo*, 136 S. Ct. at 1547 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Plaintiffs have the burden to establish these elements.  *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).  For the reasons discussed below, Plaintiffs have failed to meet their burden.

Here, Plaintiffs have not (and cannot) allege any concrete harm sufficient to establish an injury-in-fact that is redressable by this Court.  Accordingly, under Article III, Plaintiffs lack standing to pursue their claims, and this Court lacks subject matter jurisdiction.  In *Spokeo*, the Supreme Court addressed Article III standing for FCRA claims seeking statutory and punitive damages for alleged technical, statutory violations (like here), and determined that plaintiffs cannot "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and [a private rights of action]."  *Id.* at 1549.  In *Spokeo*, Robins filed a putative class action, alleging that Spokeo violated the FCRA by posting inaccurate information about him on its website.  *Id.* at 1546.  Robins sought statutory and punitive damages for an alleged willful FCRA violation.  *Id.* In particular, Spokeo's website depicted Robins as a relatively affluent married

man in his fifties, with children, a graduate degree, and a job, when in reality Robins was an unemployed single male with no children or graduate degree. *Id*. Robins alleged that the inaccuracies made him appear overqualified and less mobile due to alleged family responsibilities. *Id*. at 1555-56 (Ginsberg J. dissenting). The district court dismissed Robins' FCRA claims for lack of standing, but the Ninth Circuit reversed, holding that Robins adequately alleged injury-in-fact, because Spokeo "violated his statutory rights . . . ." *Id.* at 1544.

The Supreme Court vacated and remanded the action, holding that the Ninth Circuit's injury-in-fact analysis was incomplete and only addressed "particularization," but not "concreteness." *Id*. at 1548. And, the Supreme Court determined that, to establish an injury-in-fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is *both* "concrete and particularized." *Id.* at 1547-48 (citing *Lujan*, 504 U.S. at 560) (emphasis added).

To be "concrete," an alleged injury "must actually exist;" it must be "real," and not "abstract." *Id*. at 1548-49. Ultimately, a plaintiff bringing suit under the FCRA cannot "allege a *bare procedural violation, divorced from any concrete harm*, and satisfy the injury-in-fact requirement of Article III." *Id*. at 1549 (emphasis added). The Supreme Court specifically found that a "violation of one of the FCRA's procedural requirements may result in no harm," specifically

14

calling out a failure "to provide the required notice." *Id.* at 1550.[5]  Given that the failure to provide a required notice is the exact harm alleged here, and there is no other allegation of injury, *Spokeo* should erase any doubt that this Court lacks jurisdiction.  *See id.*

Subsequent case law confirms *Spokeo*'s reach and enforce a plaintiff's duty to plead concrete injury.  Most recently, the U.S. District Court for the Eastern District of Wisconsin held that a plaintiff failed to allege a concrete injury-in-fact by relying on a mere statutory violation.  *See* Decision and Order, *Gubala v. Time Warner Cable, Inc.*, No. 15-cv-1078-PP (E.D. Wis. June 17, 2016), ECF No. 38. Relying on *Spokeo*, the court in *Gubala* explained that the plaintiff failed to allege "a concrete injury as a result of the defendant's retaining his personally identifiable information."  *Id.* at pg. *10.  Similarly, Plaintiffs do not allege any concrete harm or injury and impermissibly rely solely upon alleged statutory violations.

This is also consistent with this Court's prior rulings.  For example, *Slack v. Suburban Propane Partners, L.P.*, (a case brought by one of Plaintiffs' counsel)

---

[5]       *Spokeo*'s reasoning is supported by long-standing Third Circuit precedent.  The Third Circuit has always focused its injury-in-fact inquiry on whether a plaintiff has established actual harm, rather than a mere statutory violation.  Much like in *Spokeo*, the Third Circuit has stated that "[t]he proper analysis of standing focuses on whether the plaintiff suffered an actual injury, *not on whether a statute was violated*."  *Doe v. Nat'l Bd. Of Med. Examiners*, 199 F.3d 146, 153 (3d Cir. 1999) (emphasis added).  The Third Circuit has long rejected the idea that a mere technical statutory violation can establish an injury-in-fact.  *See Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164 (3d Cir. 2001) (Alito, J) (finding no standing for a Lanham Act violation where there was no actual harm from false advertising); *Fair Hous. Council v. Main Line Times*, 141 F.3d 439, 443-44 (3d Cir. 1998) (holding that plaintiff lacked standing because "a violation of the act does not automatically confer standing").

the plaintiff alleged that after he filed his lawsuit, the defendant ran a credit check, which negatively impacted his credit score. No. 10-cv-2548-JLL, 2010 WL 3810870, at *7-8 (D.N.J. Sept. 21, 2010). This Court dismissed the claim, stating that as part of the *prima facie* FCRA case, a "plaintiff must allege[] that he or she has sustained actual damages as a result of the statutory violation." *Id.* at 7 (citing *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 610 (7th Cir. 2005) (dismissing FCRA claim where plaintiff had not demonstrated "actual damages" and stating that "[t]he FCRA does not presume damages")).

Similarly, in *Lascaris v. Griffin Investigations, Inc.*, the plaintiff alleged he was harmed by how credit and background information was expected to be used or collected by defendants (*i.e.*, there had been no actual injury-in-fact). No. 03-cv-2172-JAG, 2006 WL 54342, at *2-3 (D.N.J. Jan. 10, 2006). The plaintiff argued that a FCRA violation supports a concrete injury even if he has not applied for, or been denied credit or employment. *Id.* at *3. This Court rejected the plaintiff's argument as a "weak … end run around" the injury-in-fact constitutional requirement, which required an actual injury, not just an alleged statutory violation. *Id.* at *3-4.

More recently in *In re Horizon Healthcare Servs., Inc. Data Breach Litig.*, this Court dismissed FCRA claims where the plaintiffs alleged that they suffered injury-in-fact based, in part, on a "violation of common law and statutory rights."

16

No. 13-cv-7418-CCC, 2015 WL 1472483, at *4-5 (D.N.J. Mar. 31, 2015). This Court stated that that "[i]t is well settled that '[t]he proper analysis of standing focuses on whether the plaintiff suffered an actual injury, not on whether a statute was violated,'" and held that plaintiff "may not rest on mere violations of statutory and common law rights to maintain standing." *Id*. at *5, 8-9 (*citing Doe*, 199 F.3d at 153); *see also Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 853 (S.D. Tex. 2015) ("Every party that comes before a federal court bears the burden of establishing the existence of an injury that is 'concrete, particularized, and actual or imminent) (internal citations and quotation marks omitted); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, No. MDL 2360, 2014 WL 1858458, at *10 (D.D.C. May 9, 2014) ("Standing, however, does not merely require a showing that the law has been violated.")); *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 469 (D.N.J. 2013) ("[M]erely asserting violations of certain statutes is not sufficient to demonstrate an injury-in-fact.").

*Spokeo* and its progeny, as well as earlier opinions of courts in the Third Circuit, make clear that bare procedural violations are insufficient to establish Article III standing. Nevertheless, Plaintiffs try to do just that: they rely solely upon alleged technical, statutory violations to sustain their claims. Unlike the plaintiff in *Spokeo*, Plaintiffs here do not even attempt to—nor can they—allege that Michaels took any adverse employment action against them or that they

suffered any negative consequences.  It is beyond dispute that Plaintiffs suffered no real harm, or any injury of any magnitude whatsoever.[6]

Ultimately, this case begins and ends with the fact that Plaintiffs freely admit that they (1) knew and agreed that Michaels would procure their background checks, (2) were hired and employed by Michaels for some time following their background checks, and (3) suffered no adverse action based on their background checks.  (*See* Graham FAC ¶ 24, 40; J. Bercut FAC ¶ 19; M. Bercut Compl. ¶ 32). Indeed, Plaintiff Janice Bercut remains employed with Michaels to this day.  (*See* J. Bercut FAC ¶ 19).  Plaintiffs have not alleged (and cannot allege) any real or concrete harm.  Without any actual harm, Plaintiffs rely solely upon alleged technical, statutory violations—Plaintiff Graham alleging violations of the FCRA and NJFCRA, and Plaintiffs Anderson, Janice Bercut, and Michelle Bercut, alleging only a FCRA violation.  Plaintiffs' reliance on allegations of mere statutory violations is misplaced and is fatal to their claims.  As a result, Plaintiffs

---

[6]      Notably, if this case is remanded to California state court in lieu of dismissal, as suggested by Plaintiffs (*See* ECF No. 53), Plaintiffs claims will likewise be subject to dismissal for lack of standing.  Under California law, to have standing, a plaintiff must have a "real interest" in the litigation, in that he or she has "neither suffered nor is about to suffer an injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented [to the adjudicator.]"  *Cal. Water & Telephone Co. v. Cnty. of Los Angeles*, 253 Cal. App. 2d 16, 22-23 (Cal. App. Ct. 1967).  Plaintiffs have not alleged (as they cannot) that they suffered or about to suffer <u>any</u> injury, and therefore cannot assert a claim in state court any more than before this Court.  Additionally, any claims under California's UCL require a "loss or deprivation of money or property sufficient to qualify as an injury in fact," which Plaintiffs fail to establish by far.  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (Cal. 2011).

are unable to establish the "indispensable element" of injury-in-fact.  *See Lujan*, 504 U.S. at 560.  Dismissal is proper for this reason alone.

C.     Plaintiffs Have Not Suffered Any Concrete "Informational Harm"
        And Thus Lack Standing.

Michaels anticipates that Plaintiffs may argue that Plaintiffs have suffered a concrete, but intangible, "informational harm," and will likely rely on *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998), as they did in earlier briefing in this case.  (*See* Civil Action No. 2:15-cv-02547, ECF No. 56 at 9).   More specifically, Plaintiffs will likely argue that they were deprived of statutorily required information because they allegedly were not given a compliant disclosure pursuant to the FCRA.  (*See* Civil Action No. 2:15-cv-02547, ECF No. 56 at 9). This argument is a red herring.

*Akins* is entirely distinguishable from the present case and is consistent with *Spokeo*.  In *Akins*, several plaintiffs filed a complaint against the Federal Election Commission alleging that an organization was a "political committee" under the Federal Election Campaign Act of 1971 and, therefore, was subject to public disclosure of campaign-related activities (*e.g.*, donor lists and campaign related contributions and expenditures).  *Id.* at 15.  The *Akins* plaintiffs claimed that they suffered a concrete injury-in-fact, and thus had standing to sue, because of "their inability to obtain information" about the organization's campaign-related activities harmed their fundamental voting rights.  *Id.* at 21, 25-26.  The Supreme

19

Court held that the plaintiffs sufficiently alleged an "informational injury," because the complete deprivation of *all* information subject to public disclosure constituted a concrete and particularized harm to their fundamental voting rights. *Id.* at 21; *see also Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989) (holding that plaintiff has standing where he has specifically requested, and been completely refused information under the Freedom of Information Act).

*Akins* is inapposite to the circumstances here for two reasons. First, unlike the *Akins* plaintiffs, Plaintiffs here do not allege that they were deprived *all information* regarding their background checks. Rather, Plaintiffs allege that they received *too much* information with their disclosure. (*See* Graham FAC ¶ 8-10; J. Bercut FAC ¶ 6-9; M. Bercut ¶ 4-7). There is no allegation whatsoever that Plaintiffs did not know a background check was going to be conducted.

Second, the holding in *Akins* is narrowly focused upon the lack of information regarding an organization's lobbying efforts, which if not publicly disclosed, would be injurious to the plaintiffs' fundamental voting rights. Unlike the *Akin* plaintiffs, Plaintiffs here in no way allege any resulting harm or damage from the alleged FCRA violations or any injury to any fundamental right. *Akins* is thus inapplicable.

Even in the rare instances where courts have found a concrete informational harm related to FCRA claims, the plaintiffs either did not receive any statutorily

required notice, or experienced resulting actual harm.  Those cases are therefore readily distinguishable.  *See Panzer v. Swiftships, LLC*, No. 15-2257, 2015 U.S. Dist. LEXIS 144200, at *11-12 (E.D. La. Oct. 23, 2015) (defendants denied plaintiff employment after failing to provide the plaintiff with *any* disclosure); *Ryals v. Strategic Screening Sols., Inc.*, 117 F. Supp. 3d 746, 752-54 (E.D. Va. 2015) (plaintiff was denied employment and the defendant did not provide the plaintiff with a complete record of all information as requested, or any notice regarding adverse public information); *Manuel v. Wells Fargo Bank, Nat. Ass'n*, 123 F. Supp. 3d 810, 817-18 (E.D. Va. 2015) (plaintiff was denied employment and received an inadequate disclosure).

Importantly, *Akins*, *Panzer*, *Ryals*, and *Manuel* must be read in light of *Spokeo*, which explicitly states that "Congress' role in identifying and elevating intangible harms does not mean that a *plaintiff automatically satisfies* the injury-in-fact requirement whenever a statute grants a person a statutory right and [a private right of action].  *Article III standing requires a concrete injury even in the context of a statutory violation*."  136 S. Ct. at 1549 (emphasis added).[7]  Plaintiffs have not

---

[7]     Plaintiffs may also rely on *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, No. 13-4300, 2015 WL 6875340 (3d Cir. Nov. 10, 2015), and argue that there is no need to establish a pecuniary or monetary loss to establish concreteness.  This argument is unavailing.  *Google*'s holding merely reaffirms the principle that a concrete harm can be either tangible, like monetary or pecuniary loss, or intangible.  *See Spokeo*, 136 S. Ct. at 1549.  *Google* found that the alleged intangible injury was "highly specific" and focused on concrete and particularized injury related the defendants' covert placement of unauthorized software on to the plaintiffs' personal

21

established any such concrete harm in this action.  Rather, their claims rest on mere

statutory violations that are insufficient to satisfy Article III's demanding injury-in-

fact requirement.

Accordingly, Plaintiffs' civil complaints should be dismissed in full for lack

of subject matter jurisdiction.[8]

## II.    Under Rule 12(b)(6), Plaintiffs Fail To State A Claim Upon Which Relief Can Be Granted.

### A.    Standard For Dismissal Under Rule 12(b)(6).

To survive a motion to dismiss, a complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

P. 8(a)(2).   The complaint needs "more than an unadorned, the-defendant-

unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citations omitted).

A district court determining whether a complaint meets this standard "must

accept all of the complaint's well-pleaded facts as true, but may disregard any legal

conclusions."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citing *Iqbal*, 556 U.S. at 677).  "Threadbare recitals of the elements of a cause of

---

computers to continually track their online movements.  2015 WL, 6875340, at *4.  Allegations
of such a "highly specific" injury is utterly missing from Plaintiffs' Complaint.

[8]    Removal of a state action to federal court does not divest this Court of jurisdiction to
determine whether particular plaintiffs have standing to bring claims under federal statutes.  This
Court can specifically decide whether Plaintiffs have sufficiently alleged a concrete injury-in-
fact to satisfy Article III.  *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545
U.S. 308, 312 (2005) (recognizing litigation of significant federal issues "justif[ies] resort to the
experience, solicitude, and hope of uniformity that a federal forum offers").

action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.   A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*   A complaint that cannot meet this threshold requirement is subject to dismissal for "failure to state a claim upon which relief can be granted."[9]  Fed. R. Civ. P. 12(b)(6).

> B.   Michaels Provided A Clear And Conspicuous Stand-Alone Disclosure And Complied With The FCRA And NJFCRA.

In evaluating a motion under Rule 12(b)(6), a court may consider the complaint, exhibits to the complaint, matters of public record, and undisputedly authentic documents if the plaintiffs' claims are based upon those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).   A document attached to a motion to dismiss is considered part of the pleading if it is referred to in the complaint (as it is here with each complaint) and is central to the plaintiffs' claims (also as it is here).  *See Pryor v. NCAA*, 288 F.3d 548, 559-60 (3d Cir. 2002).   Where there is a dispute between the factual allegations in the complaint and such documents, the documents will control.  *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994).

Here, each Plaintiff alleges that Michaels procured consumer reports on them without first providing a clear and conspicuous disclosure made in writing, in

---

[9]     The NJFCRA's provisions were designed to be consistent with those of the federal FCRA, and thus, unless they provide otherwise, the state and federal statutes should be analyzed using the same standards.  *See* N.J.S.A. § 56:11-29(e).

a document consisting solely of the disclosure.  (*See* Graham FAC ¶ 64 (citing 15 U.S.C. § 1681b(b)(2)(A)(i)); Graham FAC ¶ 68 (citing N.J.S.A. § 56:11-31(c)(1)); J. Bercut ¶ 7, 26; M. Bercut Compl. ¶ 4, 52).  In support, each Plaintiff attaches an incomplete printed copy of the website that they allegedly used to submit their respective employment applications and background check authorizations.  (*See* Graham FAC ¶ 28-29, Ex. 1; J. Bercut ¶ 18-20, Ex. 1; M. Bercut Compl. ¶ 32-33 Exh. 1).  Upon closer examination of Exhibit 1, Plaintiffs' allegations are patently untrue and misleading.

As a preliminary matter, Exhibit 1 contains a set off, stand-alone disclosure that satisfies the FCRA's requirement, in an internet-based format.  Beyond this disclosure, Exhibit 1 reveals that the website included a clear and conspicuous hyperlink labeled "click here for a printable copy of the Disclosure form and the Fair Credit Reporting Act."  (*See* Graham FAC Ex. 1; ECF No. 32-1, Page 5 of 7; J. Bercut Ex. 1, ECF No. 16, Page 5 of 7; M. Bercut Compl. ECF No. 1, Page 5 of 7).  The hyperlink is conspicuous and easily seen.  The hyperlink is set apart from the paragraphs preceding it, the text is underlined, and it appears in blue instead of black like the other text near it.  (*See* Marker Decl. ¶¶ 10-11).  The hyperlink is immediately followed by the area where Plaintiffs had to type in their names and other personal information for a background request form.  (*See id.*).  The hyperlink leads to a 1-page .pdf document entitled "Disclosure," as well as a

second 1-page document titled "A Summary of Your Rights Under the Fair Credit Reporting Act." (*See id.*).  The 1-page .pdf document is a clear and conspicuous disclosure, in writing, that notifies the reader that a consumer report or investigative consumer report may be obtained for employment purposes.  (*See* Marker Decl. ¶ 11, Ex. B).  The document consists solely of this disclosure, and therefore fully complies with applicable statutory obligations.  (*See id.*); *see also* 15 U.S.C. § 1681b(b)(2)(A)(i); *Reardon v. ClosetMaid Corp.*, No. 08-cv-01730, 2013 WL 6231606, at *6 (W.D. Pa. Dec. 2, 2013) ("to the extent that at least one of the two forms provided applicants with a proper disclosure under section 1681b(b) (2)(A)(i), Ms. Reardon's disclosure claim, as well as that of any other Disclosure Class member who received both forms, must fail").

Beyond the hyperlinked Disclosure, Exhibit 1 consists of a separate web-based disclosure and authorization for Michaels (or its vendor) to run a background check.  (*See* Graham FAC Ex. 1; ECF No. 32-1, Page 5 of 7; J. Bercut Ex. 1, ECF No. 16, Page 5 of 7; M. Bercut Compl. ECF No. 1, Page 5 of 7).  The "FCRA does not prohibit an employer from providing an FCRA disclosure as part of the employer's job application process.  Nor does the FCRA prohibit an employer from providing an FCRA disclosure at the same time the employer provides other employment documents."  *Newton v. Bank of Am.*, No. 2:14-cv-03714, 2015 WL

25

10435907, at *8 (C.D. Cal. May 12, 2015); *Coleman v. Kohl's Dep't Stores, Inc.*,
No. 15-cv-02588, 2015 WL 5782352, at *5 (N.D. Cal. Oct. 5, 2015).

*Coleman* is particularly instructive here.  The *Coleman* court dismissed the
plaintiffs' claims under Section 1681b(b)(2)(A) as a matter of law, holding that
defendant's Consent and Disclosure Form was a "separate document[]," from its
Employment Application and was "in compliance with the FCRA."  2015 WL
5782352, at *5 (N.D. Cal. Oct. 5, 2015).  In *Coleman*, the plaintiffs argued that the
defendant's Consent and Disclosure Form was not a stand-alone disclosure
because it was presented to them along with the Employment Application, and that
it was therefore "one document as 'part of the same employment packet.'"  *Id.*  The
court rejected this theory, finding that the two forms were separate documents that
served distinct functions, noting that the Consent and Disclosure Form was
formatted differently and "relate[d] to consumer reports only."  *Id.*  Critically, the
court also found that the Consent & Disclosure Form (both versions) complied
with the FCRA, despite containing other alleged extraneous information such as
"relevant information such as the consumer reporting agency and the consumer's
right to review the report obtained" as well as other state specific information.  *Id.*

The present case is nearly identical to *Coleman*.  Michaels presented
Plaintiffs with a web-based disclosure and authorization as well as a hyperlinked
Disclosure.  (*See* Graham FAC Ex. 1; ECF No. 32-1, Page 5 of 7; J. Bercut FAC

26

Ex. 1, ECF No. 16, Page 5 of 7; M. Bercut Compl. ECF No. 1, Page 5 of 7).  The web-based disclosure and authorization was formatted differently, and served a different purpose than the hyperlinked Disclosure.  (*See* Graham FAC Ex. 1; J. Bercut FAC Ex. 1; M. Bercut Compl. Exh. 1).  Namely, the web-based disclosure and authorization sought biographical information and provided information related to the procurement of a background check.  (*See id.*).  The hyperlinked Disclosure, by contrast, is a writing that notifies the reader a consumer report or investigative consumer report may be obtained for employment purposes. *See* Marker Decl. ¶ 11, Ex. B).

Realizing that they cannot ignore the hyperlinked Disclosure, Plaintiffs Graham, Anderson, and Michelle Bercut allege that the hyperlinked Disclosure is nonetheless non-compliant.  (*See* Graham FAC ¶ 30; M. Bercut Compl. ¶ 39-40).  In particular, Plaintiffs Graham, Anderson, and Michelle Bercut allege that the hyperlinked Disclosure violates the FCRA because it contains: information regarding an "investigative consumer report"; a statement that Michaels may share the information contained in a consumer report with Michaels "current and prospective clients, customers and/or their agents"; a reservation of rights; and the mailing and website address for the consumer reporting agency.  (*See* Graham FAC ¶ 30; M. Bercut Compl. ¶ 39).  This argument is unavailing.

27

The alleged "extraneous information" is specifically *required* by state law. *See, e.g.*, 15 U.S.C. § 1681a(d)-(e) (defining "consumer report" and "investigative consumer report" as both covered by FCRA requirements); Cal. Civ. Code § 1786.16(a)(2)(b)(iv) (identify and contact information of the screening company); § 1786.16(a)(2)(b)(vi) (consumer reporting agency's web site or telephone number); § 1786.16(a)(2)(b)(vi) & 1786.20(d) (whether consumer's personal information will be sent to third parties outside the U.S.).

Additionally, the *Coleman* court similarly rejected this argument. There, the court found that a non-California Consent and Disclosure Form complied with the FCRA, despite including "relevant information such as the consumer reporting agency and the consumer's right to review the report obtained," as well as blank spaces for the plaintiffs to fill out their applicant name, social security number, date of birth, driver's license number or state issued identification number; address (including dates of residence); previous address (including dates of residence); and the disclosure contained a certification by the company that the consumer report would be used only for employment purposes.[10] Indeed, the statutorily compliant *Coleman* disclosure included more text and information than hyperlinked Disclosure at issue here.

---

[10] The above-referenced "non-California Consent and Disclosure Form" consists of the defendant's Exhibits 1 - 6 in support of its motion to dismiss, publicly filed with the U.S. District Court for the Northern District of California on August 7, 2015 in *Coleman*, Case No. 3:15-cv-2588-JCS (N.D. Cal)., as ECF No. 32-2.

28

Plaintiffs Graham, Anderson, and Michelle Bercut also alleges that hyperlinked Disclosure was "not a clear and conspicuous disclosure because . . . the hyperlink was buried approximately 70% of the way through the online job application." (*See* Graham FAC ¶ 30; M. Bercut Compl. ¶ 39-40). This argument defies the realities of the internet age, and was similarly rejected in *Newton*. In *Newton*, like here, the defendant provided job applicants with a hyperlink in their job application directing them to the one-page "Disclosure." *Newton*, 2015 WL 10435907, at *2, 7-8. The *Newton* court held that the hyperlinked disclosure complied with the FCRA. *Id.* at *1-2, *7-8. In particular, the *Newton* court rejected the plaintiff's argument that the defendant's FCRA disclosure was not clear and conspicuous because it was part of "its job application process through a 'convoluted electronic book' exceeding fifteen pages." 2015 WL 10435907, at *7. Consistent with the capabilities of the internet-based platform, the hyperlinked Disclosure is a writing that notifies the reader a consumer report or investigative consumer report may be obtained for employment purposes. That is all that is required under the FCRA or the NJFCRA.

Accordingly, Plaintiffs were provided with the fully compliant disclosure, their claims against Michaels to the contrary must be dismissed.

C.     Plaintiffs Fail To Establish A "Willful" Violation Of The FCRA And NJFCRA.

     1.     *Plaintiffs' Fall Short Of Meeting Threshold Pleading Requirements Under Fed. R. Civ. P. 8.*

Plaintiffs also allege that Michaels willfully violated the FCRA "stand-alone" disclosure requirement.  (*See* Graham FAC ¶ 64, 69; J. Bercut FAC ¶ 37-38; and M. Bercut Compl. ¶ 52-53).   Under 15 U.S.C. § 1681n(a), and N.J.S.A. § 56:11-38(a) in Plaintiff Graham's case, the statutory damages of $100 to $1,000 per alleged violation, punitive damages, and costs and attorneys' fees (which are the only damages Plaintiffs are seeking), are only available for "willful" violations. If not willful, Plaintiffs are not entitled to, nor do they seek, any other damages.

Plaintiffs use the word "willful" throughout their complaints, yet they offer no facts to support this contention.   But Plaintiffs are *required* to plead *facts* showing that Michaels acted in a "willful" manner.   This takes more than just a characterization or a mere "formulaic recitation of the elements of a cause of action."   *Iqbal*, 556 U.S. at 678.   Plaintiffs fall short of the basic pleading requirement under Rule 8 and *Iqbal*.

Plaintiffs' alleged "facts" are inadequate, and each complaint is laden with legal arguments and unsupported conclusions.   Plaintiffs' complaints read like legal briefs, containing citations to case law and informal agency letters, as well as providing a dissertation on the FCRA's legislative history.   (*See, e.g.,* Graham

FAC ¶¶ 17-23, 33-36, 53; J. Bercut FAC ¶ 33-37; M. Bercut Compl. ¶ 22-30). Plaintiffs' legal briefing cannot be used to buttress their conclusory allegations, and as a substitute for facts. *See, e.g.*, *Van Tassel v. Lawrence Cnty. Domestic Relations Section*, 659 F. Supp. 2d 672, 676, 687 (W.D. Pa. 2009) *aff'd sub nom.*, 390 F. App'x 201 (3d Cir. 2010) (stating that plaintiff's "Complaint improperly consist of legal argument and factual assertions which this Court need not credit."); *Texter v. Merlina*, No. 04-cv-0173, 2005 WL 1513117, at *1 (M.D. Pa. June 27, 2005) *aff'd*, 333 F. App'x 680 (3d Cir. 2009) (dismissing complaint and stating legal arguments are immaterial within a complaint for relief).

Plaintiffs' attempts to create inferences where none are warranted likewise fall far short of the Rule 8 minimum. Plaintiffs Graham and Anderson asserts the year the FCRA was enacted and calculates that Michaels "had almost 40 years to become compliant," references informal agency interpretation and limited judicial opinions, and forwards generalizations that "Defendant's conduct violated the FCRA." (*See* Graham FAC ¶ 64). Plaintiff Janice Bercut states that Michaels is "a large corporation with access to legal advice," and that, despite knowledge of "the plain language of the FCRA" as well as informal regulatory guidance, it violated the FCRA. (*See* J. Bercut FAC ¶ 54). Plaintiff Janice Bercut suggests that because Michaels is a "large corporation" its alleged failure to comply must be willful noncompliance. These "threadbare recitals" and "conclusory statements" are

31

devoid of any factual support, and cannot make something out of nothing. *Iqbal*, 556 U.S. at 678; *Reed v. Swatch Grp. (US), Inc.*, No. 14-cv-896-ES, 2014 WL 7370031, at *4-5 (D.N.J. Dec. 29, 2014) (dismissing a plaintiff's claims where he simply alleged that the defendant had a long time to comply with the statute, and because the statute applied to the defendant, it must have been aware of the statutory requirements); *Komorowski v. All-Am. Indoor Sports, Inc.*, No. 13-cv-2177, 2013 WL 4766800, at *3-4 (D. Kan. Sept. 4, 2013) (dismissing FCRA claim when plaintiff alleged that defendant should have known longstanding statutory requirements given the substantial publicity surrounding the statute).

Plaintiffs point to cherry-picked case law (avoiding contrary authority), administrative guidance, and the FCRA, but offer nothing concrete to support their position beyond self-serving and conclusory allegations and inapposite authority regarding violations of the FCRA. (*See* Graham FAC ¶ 54; J. Bercut FAC ¶ 33-37; M. Bercut ¶ 52). To the extent Plaintiffs argue that Michaels knew its otherwise "objectively reasonable" conduct was unlawful, Plaintiffs have no basis for such a conclusion, particularly (as explained again below) given the tremendous differing of opinions of the existing law. Plaintiffs' conclusory allegations of "conscious disregard" cannot withstand a motion to dismiss under *Iqbal* and *Twombly*.

Disregarding, as the Court should, Plaintiffs' legal arguments and threadbare recitals of statutory text and cherry-picked authority, Plaintiffs merely assert, based

32

on nothing more than speculation, that Michaels conduct was inconsistent with the alleged legal requirements under FCRA and NJFCRA. Plaintiffs' conclusory, speculative allegations do not give rise to a plausible inference that Michaels acted willfully.

> 2. *Plaintiffs Fail To Establish A Willful Violation Of The FCRA And NJFCRA As A Matter Of Law.*

>> i. The Applicable "Willfulness" Standard.

"Willful" violations must be knowing or reckless. *See Long v. Tommy Hilfiger U.S.A.*, 671 F.3d 371, 376 (3d Cir. 2012) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58 (2007)). Recklessness, in turn, consists of "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco*, 551 U.S. at 49 (citation and internal quotation marks omitted). "[A] company subject to FCRA does not act in reckless disregard of [the FCRA] unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69.

"[T]he *Safeco* test is one of 'objective reasonableness'" of a company's interpretation of the FCRA and its requirements as a matter of law. *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 249 (3d Cir. 2012); *Safeco*, 551 U.S. at 71. The *Safeco* objectively reasonable standard considers three factors: (1) whether there is

ambiguity of the FCRA provisions at issue; (2) whether defendant's reading has a foundation in the statutory text; and (3) whether defendant had the benefit of guidance from the courts of appeals or the Federal Trade Commission ("FTC"). 551 U.S. at 70 ("[w]here . . . the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator."); *Long*, 671 F.3d at 376; *Fuges*, 707 F.3d at 251-52.

Willfulness is properly determined on a Rule 12(b)(6) motion. *See Long*, 671 F.3d at 376 (affirming Rule 12(b)(6) dismissal"); *see also Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 803 (7th Cir. 2010) (affirming Rule 12(b)(6) dismissal where "there [had] been no contrary opinion from a court of appeals or federal agency suggesting that the company's understanding of the statute [was] wrong").

Under *Safeco*'s objective reasonableness standard, even if Plaintiffs sufficiently plead a technical FCRA violation, the violation was not "willful" as a matter of law. Therefore, Plaintiffs' civil complaints fail to state a claim for relief and must be dismissed.

ii.    Defendant's Interpretation Was Not "Objectively
       Unreasonable" In Light Of Unclear Statutory Language.

*Safeco* made clear that while a defendant's reading of its statutory obligations may be erroneous, that does not mean that the violation was "willful" where the statutory provisions at issue are "less-than-pellucid," and a defendant's interpretation has a statutory foundation.  *Safeco*, 551 U.S. at 69-71; *Fuges*, 707 F.3d. at 251-52.  The FCRA's text itself is less than clear on whether a disclosure may contain other information, such as an authorization for the background check. Specifically, the FCRA requires that before a background check is conducted, an employer must provide:

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A).

Thus, while subsection (A)(i) requires a disclosure "in a document that consists *solely* of the disclosure," the next immediate subsection, allows a consumer's authorization form to "be made on the document referred to in clause (i)," *i.e.*, the disclosure.  § 1681b(b)(2)(A)(ii).  In other words, subsection (A)(ii)

*specifically permits* what exactly what Subsection (A)(i) *prohibits* the inclusion of other information within a consumer disclosure document.

In light of the statutory conflict, it is objectively reasonable for Michaels to believe not all information is excluded from a disclosure document, as FCRA subsection (A)(ii) specifically permits the inclusion additional information *i.e.*, Michaels has a foundation in the statute for its conclusion.  The text at issue appears on a web page, however, not a piece of paper.  The format must therefore be considered.  As Plaintiffs' Exhibit 1 clearly shows the application platform is separated into distinct, stand-alone sections: "Personal Information," "Days and Hours Available," "Education," "U.S. Military Service," "Legal," "Employment History," "Background Check Package Overview & Instructions" (labeled "PLEASE   READ   THIS   SECTION   CAREFULLY"),   and   "Application Agreement."  (*See* Graham Ex. 1; J. Bercut FAC Ex. 1; M. Bercut Compl. Ex. 1).

In fact, when printed, as it appears as Exhibit 1, it consists of six pages of material.  (*See id.*).  The stand-alone sections, which are boxed off and distinctly labeled with text that appears in all capital letters on a colored background, separates each into their respective distinct sections.  (*See id.*).

In the section marked "Background Check Package Overview & Instructions," the "Disclosure" is clearly set off into its own stand-alone section, separate from "State Law Notices," and "Authorization."  (*See id.*).  The purported

36

release of liability appears in another section altogether, labeled "Application Agreement." (*See id.* at p. 6 of 7).

Furthermore, in addition to the above evidence of Michaels intent to comply, Michaels provided an additional hyperlinked Disclosure that and contained no other language, and thus fully complied with the very statutory requirements Plaintiffs cite. (*See* Marker Decl. Ex. C); *Reardon*, 2013 WL 6231606, at *6 (so long as one disclosure was compliant, defendant satisfied its legal obligation).

Plaintiffs Graham, Anderson, and Michelle Bercut's allegations that the hyperlinked Disclosure violated the FCRA because it contained "extraneous information," are futile. (*See* Graham FAC ¶ 30; M. Bercut Compl. ¶ 39); *see Smith v. Waverly Partners, LLC*, No. 10-cv-00028, 2012 WL 3645324, at *5-6 (W.D. N.C. Aug. 23, 2012) (finding waiver "not so great a distraction as to discount the effectiveness of the disclosure"); *Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp. 2d 689, 699-700 (S.D. Ohio 2010) (rejecting plaintiff's argument that disclosure form was not a stand-alone document because the additional information clarified that the consumer read and understood the disclosure). Many of these items are *specifically required* by state law. *See, e.g.*, 15 U.S.C. § 1681a(d)-(e); Cal. Civ. Code § 1786.16(a)(2)(b)(iv) (identify and contact information of the screening company); § 1786.16(a)(2)(b)(vi) (consumer reporting agency's web site or telephone number); § 1786.16(a)(2)(b)(vi) &

37

1786.20(d) (whether consumer's personal information will be sent to third parties outside the U.S.).   There is no authority, statutory, case law or otherwise, supportive of Plaintiffs' claim that text required under applicable state law violates the federal FCRA.

Consistent with *Safeco*, Plaintiffs can disagree with the conclusion reached by Michaels, but that does not make the conclusion "objectively unreasonable," and thus the violation "willful," based on the statutory ambiguity.   *Safeco*, 551 U.S. at 70.

   iii. Michaels Interpretation Was Not "Objectively Unreasonable" In Light Of A Lack Of Binding Judicial Authority, Conflicting District Court Decisions, And Non-Authoritative Opinion Letters And Newsletters.

Plaintiffs claim that the inclusion of a purported liability waiver is a FCRA violation, and therefore Michaels conduct was "objectively unreasonable."   (*See* FAC ¶ 35).  The law in this area, however, is unsettled.

In *Syed v. M-I LLC*, the court addressed the question of whether a disclosure that included release language complied and whether providing such a disclosure is a willful violation.   *Syed v. M-I LLC*, No. 14-cv-742-WBS, 2014 WL 5426862 (E.D. Cal. Oct. 23, 2014).  Critically, *Syed* recognized the statutory conflict created in the FCRA's subsection 1681b(b)(2)(A), and found that the statute was "less-than-pellucid."   *Id.* at *2-3.   *Syed* also recognized a "dearth of authority" interpreting or clarifying subsection 1681b(b)(2)(A)(i) to assist the employer.   *Id.*

38

at *4.  Thus, the *Syed* court found that a combined disclosure and release was <u>not</u> a willful violation, and granted the defendant's motion to dismiss.  *Id.*

Similarly in *Schoebel v. Am. Integrity Ins. Co. of Florida*, the court found that a combined disclosure and release was not a willful violation because the defendant's interpretation was not objectively unreasonable.  No. 8:15-cv-380-T-24 AEP, 2015 WL 3407895, at *7-8 (M.D. Fla. May 27, 2015).  *Schoebel*, too, found limited authority interpreting or clarifying subsection 1681b(b)(2)(A)(i) to assist the employer.  *Id.*  The court found that when the plaintiff received the disclosure at issue, the only authority available was the ambiguous statute, non-binding FTC staff opinions, and a single non-binding federal district.  *Id.* at *8 (citing *Singleton v. Domino's Pizza, LLC*, No. 11-cv-1823-DKC, 2012 WL 245965 (D. Md. Jan. 25, 2012)).

Notably, the same state of limited authority in support of Plaintiff's claim existed at the time Plaintiff Janice Bercut's background check in the fall of 2013.  (*See* J. Bercut FAC ¶ 19).  By the time Plaintiff Graham authorized her background check in June 2014, available authority was decidedly more divided and unclear where only two non-binding federal district decisions supported Plaintiffs' asserted position (*Singleton* and *Reardon*), while two other federal district decisions held that the include of additional information into a disclosure, such as wavier, did not violate the FCRA (*Waverly Partners* and *Burghy*).  (*See*

Graham FAC ¶ 24).   By the time Plaintiffs Anderson and Michelle Bercut executed their respective disclosures, only another two non-binding federal district decisions (*Avila v. NOW Health Grp., Inc.*, No. 14-cv-1551, 2014 WL 3537825 (N.D. Ill. July 17, 2014) and *Dunford v. Am. DataBank, LLC*, 64 F. Supp. 3d 1378, 1385 (N.D. Cal. 2014)) supported Plaintiffs' position, while at same time *Syed* recognized a "dearth of authority" interpreting or clarifying subsection 1681b(b)(2)(A)(i).   (*See* Graham FAC ¶ 37; M. Bercut Compl. ¶ 32); *Syed*, 2014 WL 5426862, at *3-4.   Thus, there was a limited amount of authority regarding this issue at the time of each Plaintiff's application.

More recently, in *Just v. Target Corp.*, the court found no willful violation where defendant provided job applicants with an online "Consent and Disclosure" form that did not contain a liability disclosure. No. 15-cv-4117, 2016 WL 2757370, at *5 (D. Minn. May 12, 2016).   In *Just*, the plaintiff claimed that the online "Consent and Disclosure" contained allegedly impermissible, extraneous information, including a statement regarding teamwork among the defendant's employees, a notice that applicants must report inaccuracies in their consumer report with the consumer reporting agency, reservation or rights regarding at will employment, and other state specific disclosures.   *Id.* at *1-2.   The court determined it was unnecessary to determine whether the online "Consent and Disclosure" violated the stand-alone disclosure requirement, because the plaintiff

40

failed to specifically allege a willful violation, noting a dearth of potential authority identified in *Safeco* that would guidance regarding the parameters of the stand-alone disclosure requirement.  *Id.* at *5; *see also* Order at 2, *Peikoff v. Paramount Pictures Corp.*, No. 15-cv-0068 (N.D. Cal. Mar. 25, 2015), ECF No. 17 (dismissing complaint and finding that although inclusion of a one sentence certification in a disclosure did not comply with a strict reading of [the FCRA] . . . it is not plausible that [defendant] acted in reckless disregard of the requirements of the FCRA by using this language."); *Goldberg v. Uber Techs., Inc.*, No. 14-cv-14264, 2015 WL 1530875, at *2 (D. Mass. Apr. 6, 2015).

Plaintiffs' anticipated reliance on multiple district court decisions is unavailing as, none of these decisions are from a federal appellate court and the majority of the discussions post-date Plaintiffs' executed disclosures.  *See, e.g.*, *Groshek v. Great Lakes Higher Educ. Corp.*, No. 15-cv-143, 2015 WL 7294548, at *2 (W.D. Wis. Nov. 16, 2015) (finding that the FCRA was clear that release language is not permitted within a disclosure); *Robrinzine v. Big Lots Stores, Inc.*, No. 15-cv-7239, 2016 WL 212957, at *5-6 (N.D. Ill. Jan. 19, 2016) (same); *Martin v. Fair Collections & Outsourcing, Inc.*, No. 14-cv-3191, 2015 WL 4064970, at *3-4 (D. Md. June 30, 2015) (same); *Reardon*, 2013 WL 6231606, at *10-11; *Singleton*, 2012 WL 245965, at *6-7 (same); *Milbourne v. JRK Residential Am., LLC*, No. 12-cv-861, 2015 WL 1120284, at *6-8 (E.D. Va. Mar. 11, 2015) (same).

41

Significantly, *no court in the Third Circuit has addressed this issue*, and the Michaels disclosure had no release of liability in the disclosure.

Remaining judicial authority on the FCRA disclosure requirement is decidedly mixed and reinforces the "less-than-pellucid" nature of Section 1681b(b)(2)(A). For example, *Burghy*, the court disagreed that the explanatory or helpful language included within a disclosure rendered it inconspicuous. 695 F. Supp. 2d at 697-700. Rather, *Burghy* held that an FCRA disclosure is both conspicuous and "solely [] the disclosure," even if surrounded by other text within the document, because the FCRA permits an authorization to be included with the disclosure. *Id.* at 698-700. Additionally, in *Waverly Partners*, the court recognized the tension in the statutory text and, to give effect to the word "solely" under subsection (A)(i), found that the release language "was not so great a distraction as to discount the effectiveness of the disclosure and authorization statements." 2012 WL 3645324, at *5-6. In light of the different results in *Syed*, *Schoebel*, *Waverly Partners*, *Burghy*, *Reardon*, and *Singleton*, there is no clear answer regarding what can be included in a disclosure.

Importantly, each complaint relies on informal and non-authoritative FTC Advisory Opinion Letters and a FTC staff report. (*See* Graham FAC ¶ 53, Exh. 3;

J. Bercut FAC ¶ 29-31; M. Bercut Compl. ¶ 26-28).[11]  FTC staff commentary is insufficiently authoritative to establish that Michaels interpretation and conduct was objectively unreasonable.  First, *Safeco* found that a similar FTC Opinion Letter was not authoritative because it "[did] not canvass the issue" and "explicitly indicated that it was merely 'an informal staff opinion . . . [and is] not binding on the Commission.'"  *Safeco*, 551 U.S. at 70 n.19; *Syed*, 2014 WL 5426862, at *4 (finding "views" of an agency's staff does not, without more, become legally binding authority).  Indeed, the cited FTC Opinion Letters state that "[t]he views that are expressed above are those of the Commission's staff and not the views of the commission itself."  (*See* Graham FAC ¶ 35, Exh 3).

Second, the *Waverly Partners* court found that FTC staff members contradicted themselves by stating that additional information within a disclosure may be distracting and thus impermissible, while also asserting that including an authorization within a disclosure would not be unduly distracting.  *Waverly Partners*, 2012 WL 3645324, at *6.  As it turns out, the FTC is no clearer than the ambiguous text of the FCRA.

---

[11]    While not specifically cited, Plaintiff Janice Bercut's First Amended Complaint makes use of language from the Letter from Clarke Brinckerhoff , Att'y, Div. of Credit Practices, FTC, to H. Rowan Leathers, III, Esq., Manier & Herod (September 9, 1998) (*See id.* ¶ 29); Letter from William Haynes, Att'y, Div. of Credit Practices, FTC, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998) (*See id*. ¶ 30); and the Federal Trade Commission, 40 Years of Experience with the Fair Credit Reporting Act, An FTC Staff Report with Summary of Interpretations (July 2011) (*See id.* ¶ 31).

Last, the fact that Plaintiffs Graham, Anderson, and Michelle Bercut point to GIS Newsletters, which were not even alleged to have been received by Michaels, and are neither a judicial decision nor FTC authoritative guidance, is likewise irrelevant. (*See* Graham FAC ¶ 45; M. Bercut Compl. ¶44); *see also Safeco*, 551 U.S. at 69-70. The GIS Newsletters are nothing more than GIS's marketing materials discussing recent FCRA lawsuits, a far cry from authoritative guidance.

Accordingly, the paucity of binding judicial authority and the ambiguity of the statutory text preclude a finding that Michaels acted in an objectively unreasonable manner. Michaels statutory interpretation, or its acceptance of one court's view over another, cannot be deemed objectively unreasonable.

Even if a technical violation of the FCRA or NJFCRA occurred as to Plaintiffs' complaint Exhibit 1, Michaels cannot be found to have "willfully" violated the FCRA or the NJFCRA where it complied by providing each Plaintiff a separate and distinct, hyperlinked Disclosure. *See supra* II.B.; *see also Reardon*, 2013 WL 6231606, *6 (so long as one disclosure was compliant, defendant satisfied its legal obligation).

This Court should therefore dismiss Plaintiffs' First Amended Complaint for failure to state a claim.

27279527v.14

D.     Plaintiffs Contractually Waived Their Rights To Assert Claims
       Arising From The Investigations Into Their Respective Backgrounds.

Plaintiffs additionally waived their rights to sue Michaels, and released

Michaels from liability, when they each agreed to the Terms of Use of

PeopleAnswers/Infor's platform.   A person may waive a right she has, unless

forbidden by law or public policy.  *See Hojnowski v. Vans Skate Park*, 187 N.J.

323, 332-333 (2006).   Where a waiver provision is clear and unambiguous, the

plain language of the written document controls.  *Beneventine v. Siemens Hearing*

*Instruments, Inc.*, 2012 WL 6554264, at *3 (App. Div. 2012).   This is clearly the

case here.

Exhibit 1 to each civil complaint purports to be the online application

platform that Plaintiffs completed, which is operated by PeopleAnswers/Infor.

(*See* Graham FAC Ex. 1; J. Bercut FAC Ex. 1; M. Bercut Compl. Ex. 1).   The

Terms of Use must be reviewed and accepted before a potential applicant may use

the platform.   (*See* Marker Decl. ¶¶ 8-9).   The Terms of Use include a waiver,

releasing PeopleAnswers/Infor's licensors and Client-Employers from any legal

liability or damages resulting from the use of the online platform.   (*See* Marker

Decl.   ¶   9,   Ex.   A).     Plaintiffs   allege   that   they   each   completed

PeopleAnswers/Infor's platform process and subsequently received employment

from Michaels.   (*See* Graham FAC ¶¶ 24-26; 37-38; J. Bercut FAC ¶ 19; M. Bercut

Compl. ¶ 32).

45

Plaintiffs knowingly and intentionally agreed to a clear and unambiguous waiver of all claims that they may have against Michaels arising out of each of their use of the PeopleAnswers/Infor's platform, including the claims related to the background checks performed upon each Plaintiff following their receipt of electronic disclosures and authorizing the same background checks. Plaintiffs cannot plead willful ignorance of the provision to escape its enforceability. *Connelly v. PNC Bank, N.A.*, No. A-2007-06T1, 2008 WL 2167831, at *2 (App. Div. May 27, 2008) (finding that "absent fraud, a person is bound by a contract she signs even though she chooses not to read it."). Because of the waiver and release of liability, Plaintiffs cannot sue Michaels based on anything relating to the PeopleAnswers/Infor's platform, and their claims should be dismissed.

> E.   **Plaintiff Janice Bercut's UCL Claim As A Matter Of Law Because Her Claim For Injunctive Relief Is Preempted By The FCRA.**

Plaintiff Janice Bercut alleges that Michaels also violates the UCL by engaging in either an "unlawful" or "unfair" business act or practice by failing to comply with the FCRA. (*See* J. Bercut FAC ¶¶ 67-68). Under her UCL claims, Plaintiff Janice Bercut seeks *only* "an order enjoining [Michaels] from continuing to engage in [violations of the FCRA]. (*See* J. Bercut FAC ¶ 69). Plaintiff's claim for injunctive relief under the UCL is preempted, and should be dismissed.

The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under California state law.

*Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). "A UCL action is an equitable action . . . [D]amages are not available." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (Cal. 2000). Under the FCRA, private plaintiffs may seek only money damages and not equitable relief such as an injunction, which is specifically reserved to the FTC. *See* 15 U.S.C. § 1681s(a); *Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263, 268 (5th Cir. 2000) ("Congress vested the power to obtain injunctive relief solely with the FTC."); *accord Weiss v. Regal Collections*, 385 F.3d 337, 341 (3d Cir. 2004), abrogated on other grounds by *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016); *see also Miller v. Sunoco, Inc.*, No. 07-cv-1456, 2008 WL 623806, at *3 (E.D. Pa. Mar. 4, 2008).

Plaintiff Janice Bercut cannot use state law to obtain an injunction for FCRA violations because the FCRA expressly preempts any state law that inconsistent with its remedial scheme. *See, e.g.*, *Dicesari v. Asset Acceptance LLC*, No. 11-cv-6815, 2012 WL 4108944, at *6 (E.D. Pa. Sept. 18, 2012) (granting motion to dismiss "to the extent that Plaintiff seeks this injunction not under the FCRA, but under state law"); *Poulson v. Trans Union, LLC*, 370 F. Supp. 2d 592, 593 (E.D. Tex. 2005) (same); *Hamilton v. DirecTV, Inc.*, 642 F. Supp. 2d 1304, 1306 (M.D. Ala. 2009) (same); *Millett v. Ford Motor Credit Co.*, No. 04-cv-2450-CM, 2006 WL 1301160, at *4 (D. Kan. May 9, 2006). The same holds true for UCL actions

47

seeking injunctive relief under the FCRA. *See Quadrant Info. Servs., LLC v. LexisNexis Risk Solutions, Inc.*, No. 11-cv-6648 SBA, 2012 WL 3155559, at *3 (N.D. Cal. Aug. 2, 2012) (dismissing UCL claim seeking injunctive relief under FCRA violations because such relief is preempted); *Moran v. Screening Pros, LLC*, No. 12-cv-05808, 2012 WL 10655744, at *8 (C.D. Cal. Sept. 28, 2012) (same). Therefore, Plaintiff Janice Bercut's UCL claims should be dismissed as they are preempted.

## CONCLUSION

For the foregoing reasons, the Court should dismiss each civil complaint centralized under MDL No. 2516 in full and with prejudice, and grant any other relief the Court deems necessary and just.

27279527v.14

DATED: June 23, 2016                              SEYFARTH SHAW LLP

By: */s/Robert T. Szyba*
     Robert T. Szyba
     **SEYFARTH SHAW LLP**
     620 Eighth Avenue
     New York, NY 10018
     Telephone: (212) 218-5500
     Facsimile: (212) 218-5526

     Pamela Q. Devata (*pro hac vice*)
     **SEYFARTH SHAW LLP**
     131 S. Dearborn Street, Suite 2400
     Chicago, IL 60603
     Telephone: (312) 460-5000
     Facsimile: (312) 460-7000

     Keith Miller
     **ROBINSON MILLER LLC**
     One Newark Center
     19th Floor
     Newark, NJ 07102
     Telephone No.: (973) 690-5400
     Facsimile No.: (973) 466-2760
     Kmiller@rwmlegal.com

     *Attorneys for Defendant*
     *Michaels Stores, Inc.*

49